IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

_____

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, ) | |
|  ) | |
| Plaintiff, ) | |
|  ) | |
| ILSENBURGER GROBBLECH GMBH, ) | |
| SALZGITTER MANNESMANN GROBBLECH ) | |
| GMBH, SALZGITTER FLACHSTAHL GMBH, ) | |
| SALZGITTER MANNESMANN ) | |
| INTERNATIONAL GMBH, and ) | Consol. Court No. 17-0158 |
| FRIEDR. LOHMANN GMBH, ) | |
|  ) | |
| Consolidated Plaintiffs, ) | |
|  ) | |
| v. ) | |
|  ) | |
| UNITED STATES, ) | |
|  ) | |
| Defendant, ) | |
|  ) | |
| NUCOR CORPORATION and SSAB ) | |
| ENTERPRISES LLC, ) | |
|  ) | |
| Defendant-Intervenors. ) | |
| _____) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff AG der Dillinger Hüttenwerke (Dillinger), ECF No. 165, concerning the United States Department of Commerce's (Commerce) final results of the third remand redetermination filed in accordance with this Court's decision and third remand order in *AG Der Dillinger Hüttenwerke v. United States*, 592 F. Supp. 3d 1344 (Ct. Int'l Trade 2022) (*Dillinger Germany III*). *See* Final Results of Redetermination Pursuant to Court Remand, Dec. 15, 2022 (Third Remand Redetermination), ECF No. 153. For the reasons explained below, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United

States.

## BACKGROUND

On April 4, 2017, Commerce published its final determination for the antidumping duty investigation covering certain carbon and alloy steel cut-to-length (CTL) plate from Germany. *See Certain Carbon and Alloy Steel Cut-to-Length Plate from the Federal Republic of Germany*, 82 Fed. Reg. 16,360 (Dep't of Commerce Apr. 4, 2017) (final LTFV determ.), and accompanying Issues and Decision Memorandum (IDM). In the final determination, Commerce adjusted Dillinger's reported costs for non-prime products to reflect the products' sales value as recorded in Dillinger's normal books and records and reallocated the difference to the cost of prime plate. *See* IDM at Comment 1.

On September 6, 2019, this Court instructed Commerce to recalculate the antidumping margin for Dillinger and Salzgitter Mannesmann Grobblech GmbH, Salzgitter Flachstahl GmbH, Salzgitter Mannesmann International GmbH (collectively, Salzgitter), following the adverse facts available methodology applied to certain downstream sales used in *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1364 (Ct. Int'l Trade 2018). *See AG Der Dillinger Huttenwerke v. United States*, 399 F. Supp. 3d 1247 (Ct. Int'l Trade Sept. 6, 2019) (*Dillinger Germany I*). Under protest, Commerce applied the partial adverse facts available methodology, which had no impact on Dillinger's recalculated estimated weighted-average dumping margin. Third Remand Redetermination at 3.

On August 18, 2021, this Court remanded for Commerce to reconcile its reallocation of costs between prime and non-prime plate consistent with the United States Court of Appeals for the Federal Circuit's opinion in *Dillinger France* and to rely on the actual costs of production for prime and non-prime plate. *See AG Der Dillinger Hüttenwerke v. United States*, 534 F. Supp. 3d

1403 (Ct. Int'l Trade 2021) (*Dillinger Germany II*) (citing *Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020)) (*Dillinger France*).

Commerce then issued its second remand redetermination on January 20, 2021. Third Remand Redetermination at 3. Regarding the issue of its non-prime plate adjustment, Commerce explained that it had reopened the record and issued a supplemental questionnaire to Dillinger to obtain the physical characteristics of the non-prime plate produced and the actual cost of producing the non-prime products, in line with the *Dillinger France* holding. *Id*. Dillinger did not provide the physical characteristics or the actual product specific cost of production of non-prime plate. *Id*. at 6. Therefore, in its second remand redetermination, because necessary information was missing from the record, Commerce applied facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(1) and used the total cost of production for both prime and non-prime plate as recorded in Dillinger's books and records. *Id*. at 3-4.

On September 23, 2022, this Court remanded Commerce's second remand redetermination. *See Dillinger Germany III*. The Court held that because the parallel *Dillinger France* proceeding had been remanded to Commerce for further explanation or reconsideration of Commerce's determination that the "likely selling price" in Dillinger's normal books and records was the best available information to use as facts otherwise available to determine the cost of producing the merchandise, a remand is "equally appropriate here." 592 F. Supp. 3d at 1349.

In the third remand redetermination, Commerce explained that it had "continued to rely on Dillinger's normal books and records, which is the only reasonable approach for determining the allocation of total costs between prime and non-prime products, and the per-unit costs of non-prime products." Third Remand Redetermination at 4. Further, Commerce explained that the

3

recorded information "for non-prime products in Dillinger's normal books and records is not only the best available information on the record, but also ensures that the reported costs reasonably reflect the cost of producing both prime and non-prime products." *Id*. at 5.

Commerce used as an example that, although Dillinger "may intend to produce 100 prime units, it may conclude after quality testing that two of the units are imperfect plates that are not suitable for use in the same applications as prime products." *Id*. Commerce determined, therefore, that "the only reasonable approach" was to rely on Dillinger's normal books and records as facts available "because it recognizes that, where Dillinger cannot produce 98 perfect plates without producing two imperfect plates, the lost value of the two imperfect plates is actually a cost of producing the 98 perfect ones and should be accounted for as such." *Id*. As a result, Commerce determined that it was unreasonable to use Dillinger's proposal to assign the average cost of all prime products "because Dillinger chooses not to track the actual costs of producing non-prime products{.}." *Id*. at 6.

## ARGUMENT

I. **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed.*

4

*Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

## II. Commerce's Third Remand Redetermination Complies With The Court's Remand Order Because It Is Supported By Substantial Evidence And In Accordance With Law

Commerce's third remand redetermination complies with the Court's remand order. Consistent with the Court's remand order, Commerce provided further explanation for its reliance on Dillinger's normal books and records as facts otherwise available and how the information is the best available information on the record and ensures that the reported costs reasonably reflect the cost of producing both prime and non-prime plate. *See Dillinger Germany III*, 592 F. Supp. 3d at 1349. Specifically, Commerce explained that because the total actual costs incurred by Dillinger, and verified by Commerce, must be allocated to all products produced, not knowing the actual cost of producing the non-prime products directly impacts the amount of costs assigned to the production of prime products. Third Remand Redetermination at 5.

For example, if too much or too little cost is assigned to the non-prime products, then, correspondingly, too little or too much cost is assigned to the prime products produced because the production of non-prime products is an inevitable consequence of Dillinger's production of prime products because non-prime products are unintentional, or cast-offs. *See id*. Thus, Commerce's determination that its reliance on Dillinger's normal books and records, as facts otherwise available, to value both the prime and non-prime merchandise is the only reasonable approach because that approach recognizes that the lost value of any imperfect, or non-prime merchandise, is necessarily related to the original cost of Dillinger's production of the intended original prime merchandise. *See id*.

However, Dillinger argues that Commerce has not complied with the Court's remand order because it has "not made any change in its original determination and continues to write

down the reported costs of non-prime plate to its sales value and shift these costs to prime plate, the exact thing the {Federal Circuit} found to be unlawful." Dillinger Cmts. at 1. This argument misses the mark because this Court did not hold that *Dillinger France* prevented Commerce from relying on Dillinger's normal books and records as facts otherwise available. *See Dillinger Germany II*, 534 F. Supp. 3d at 1413-14.

Dillinger argues that Commerce should accept its "estimated" costs of producing non-prime products because Commerce relied on the costs assigned to non-prime products in the normal books and records of the respondent in *Husteel Co. v. United States*, 552 F. Supp. 3d 1405 (Ct. Int'l Trade 2022). Dillinger Cmts. at 12. This argument ignores that in *Husteel*, Commerce relied on these costs because it determined that the respondent "does not separately classify prime and non-prime products, nor does it value these products differently for inventory purposes, but rather assigns them full cost" and that the respondent's "reported costs reflect the actual costs of producing non-prime products." *Husteel*, 552 F. Supp. 3d at 1411. In contrast, Dillinger values prime and non-prime products differently. *See* Third Remand Redetermination at 10. Specifically, Dillinger "values non-prime products at their likely selling price, rather than full cost." *Id.*

Second, contrary to Dillinger's argument, this Court only ordered that Commerce "further explain" its reliance on Dillinger's normal books and records as facts otherwise available, and was not required to *change* its original determination or change its use of Dillinger's books and records as facts otherwise. *Dillinger III*, 592 F. Supp. 3d at 1349. Indeed, following the Federal Circuit's remand in the parallel *Dillinger France* decision, and Commerce's resulting remand redetermination, this Court held that "while the Federal Circuit directed Commerce to 'determine the actual costs of prime and non-prime products' to calculate

6

normal value, this directive does not necessarily identify – or cabin – what information Commerce may or may not rely upon as facts otherwise available . . . once the agency concludes it cannot 'determine the actual costs of prime and non-prime products.'" *Dillinger France S.A. v. United States,* 589 F. Supp. 3d 1252, 1260 (Ct. Int'l. Trade 2022).

Third, Dillinger argues that the selection of facts available must correspond to the cost of materials or other processing employed in producing non-prime products, and that Commerce failed to explain how the likely selling prices correspond to the cost of materials or other processing used in producing non-prime products, and such use of the likely selling prices was unreasonable and inaccurate. *See* Dillinger Cmts. at 7-9. Dillinger also argues that Commerce's shifting of production costs from non-prime products to prime products is contrary to 19 U.S.C. § 1677b(b)(3), which states that the reported costs of production "shall be an amount equal to" the cost of materials or other processing employed in producing the merchandise. *Id.* at 8.

This argument is meritless. Substantial evidence supports Commerce's determination that use of Dillinger's books and records was the best available information on the record to determine the "likely selling price of non-prime products" that "results in a reasonable allocation of total costs to prime products, because it recognizes the total direct costs (*i.e.*, direct materials and conversion costs) and indirect costs (*i.e.*, the lost value of the non-prime plates) attributable to the production of prime plates." *See* Third Remand Redetermination at 14.

For example, Dillinger's audited financial statements explicitly acknowledge that the lost value attributable to the production of non-prime products is an indirect cost of producing prime products and such products are valued at their likely selling prices. *Id.* Thus, Commerce determined that because "Dillinger did not submit information which would have permitted Commerce to determine the actual costs of producing non-prime products for the purposes of

7

calculating normal value," it does not have the necessary information with which to complete its margin calculation, and it is reasonable and in accordance with law for Commerce, as facts otherwise available, to rely on record information consisting of Dillinger's normal books and records to fill in the gaps of the record (which, again, exist because of Dillinger's failure to provide such information). *Id.*

Next, there is no record support for Dillinger's argument that its costs of producing non-prime products cannot be "lower" than its cost of producing its prime products. *See* Dillinger Cmts. at 5, 20. As Commerce explained, "there is no evidence on the record to support Dillinger's assumption that its costs of producing non-prime products cannot be lower than its cost of producing its prime products." Third Remand Redetermination at 12. In other words, there is a possibility that Dillinger profited on some of its sales of non-prime products, because "{a}bsent the physical characteristics and actual {cost of production} information for the non-prime products produced," Dillinger cannot point to any record evidence supporting its assumptions. *Id.* at 14.

Dillinger also argues that the calculation it reported using specific yield rates for regular plate and line-pipe plate is the "most reasonable calculation" and most accurate information on the record. Dillinger Cmts. at 7. However, Dillinger's proffered "estimate" is based on assumptions due to Dillinger's decision not to provide Commerce with information concerning the physical characteristics of the non-prime merchandise produced or the actual product-specific costs of producing non-prime products. Third Remand Redetermination at 12.

Also, Dillinger's argument that its proffered "estimate" is the most reasonable calculation because it was developed using Dillinger's product-line specific overall yield rates is without merit, because the product-line specific yield rates do not show that Dillinger's actual costs of

8

producing non-prime products on average equaled its average costs of producing prime products. *Id.* Because Dillinger did not provide information concerning the physical characteristics of non-prime products, there is no evidence to support an inference that the dispersion of the physical characteristics of non-prime products is the same as the dispersion of the physical characteristics of prime products. *Id.* at 12-13. Thus, Dillinger's likely selling prices contained in its books and records continue to be the best available information on the record for Commerce to use as facts otherwise available.

Finally, Dillinger again argues that Commerce has imposed an impermissible adverse inference in selecting from among the facts otherwise available owing to the informational gap created by Dillinger. Dillinger Cmts. at 14. However, Commerce's reliance on Dillinger's books and records to fill an informational gap created by Dillinger's decision is permissible for two reasons. First, Commerce did not make a finding that an adverse inference was warranted pursuant to 19 U.S.C. § 1677e(b) – a prerequisite for applying an adverse inference when selecting from among the facts otherwise available on the record. *See generally* ThirdRemand Redetermination. Second, Commerce selected from among the facts otherwise available *without* an adverse inference, which is demonstrated by Commerce's reliance on the record information as submitted by Dillinger and recorded in Dillinger's own normal books and records. *See, e.g.*, *id.* at 14 (relying on the "likely selling price recorded in {Dillinger's} normal books and records"). Commerce's use of a party's own information "accords with {Dillinger's} recognition that the information recorded in its normal books and records results in the total direct and indirect costs reasonably attributable to the production of prime products being allocated to prime products." *Id.* at 16. Therefore, this argument is without merit because Dillinger cannot demonstrate that Commerce used an adverse inference in selecting Dillinger's

own submitted information, without alteration, as the best available information to fill gaps in the record.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter judgment in favor of the United States.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/ Tara K. Hogan<br>TARA K. HOGAN<br>Assistant Director |
| OF COUNSEL:<br>AYAT MUJAIS<br>Attorney<br>Office of the Chief<br>Counsel for Trade Enforcement<br>& Compliance<br>U.S. Department of Commerce | /s/Kara M. Westercamp<br>KARA M. WESTERCAMP<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Tel: (202) 305-7571<br>Email: kara.m.westercamp@usdoj.gov |
| March 23, 2023 | Attorneys for Defendant |

CERTIFICATE OF COMPLIANCE

     I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,532, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
Department of Justice
Civil Division

## THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, | |
| Plaintiff, | |
| ILSENBURGER GROBBLECH GMBH, SALZGITTER MANNESMANN GROBBLECH GMBH, SALZGITTER FLACHSTAHL GMBH, SALZGITTER MANNESMANN INTERNATIONAL GMBH, and FRIEDR. LOHMANN GMBH, | Consol. Court No. 17-0158 |
| Consolidated Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| NUCOR CORPORATION and SSAB ENTERPRISES LLC, | |
| Defendant-Intervenors. | |

## **ORDER**

Upon consideration of plaintiff's comments regarding the Department of Commerce's third remand redetermination, ECF No. 153, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's remand results are sustained.

Dated: _____    _____
        New York, New York                  Senior Judge

11