NON-CONFIDENTIAL VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, *et al.*,<br><br>          Plaintiffs,<br><br>          v.<br><br>UNITED STATES,<br><br>          Defendant,<br><br>          and<br><br>NUCOR CORPORATION, *et al.*,<br><br>          Defendant-Intervenors. | Before: Hon. Leo M. Gordon<br><br>Court No. 17-00158<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information Removed from Page: 5 |

## DEFENDANT-INTERVENOR NUCOR CORPORATION'S COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: March 30, 2023

| Ct. No. 17-00158 | NON-CONFIDENTIAL VERSION |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. Commerce's Decision to Rely on Dillinger's Books and Records Instead of Dillinger's Estimated Costs Is In Accordance With Law .......................2

    B. Commerce's Remand Results Are Consistent with the U.S. Court of Appeals for the Federal Circuit Opinion and Other Court Precedent ...................................................................................................6

    C. Commerce Did Not Impermissibly Apply An Adverse Inference ..........................7

III. CONCLUSION ......................................................................................................................9

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabama Aircraft Industries, Inc. v. United States*,
   586 F.3d 1372 (Fed. Cir. 2009) ................................................................................................3

*Dillinger France S.A. v. United States*,
   981 F.3d 1318 (Fed. Cir. 2020) ................................................................................................6

*Dillinger France S.A. v. United States*,
   No. 17-00159, slip op. 22-97 (Ct. Int'l Trade Aug. 18, 2022) .............................................3, 6

*Husteel Co. v. United States*,
   552 F. Supp. 3d 1405 (Ct. Int'l Trade 2022) ...........................................................................7

*IPSCO v. United States*,
   965 F.2d 1056 (Fed. Cir. 1992) ................................................................................................6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .........................................................................................................2, 3, 4

*SKF USA Inc. v. United States*,
   630 F.3d 1365 (Fed. Cir. 2011) ................................................................................................2

*U.S. Steel Corp. v. United States*,
   37 CIT 1799, 953 F. Supp. 2d 1332 (2013) .............................................................................2

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951) .................................................................................................................2

*Zhaoqing New Zhongya Aluminum Co., Ltd. v. United States*,
   36 CIT 1390, 877 F. Supp. 2d 1301 (2012) .............................................................................2

**Statutes**

19 U.S.C. § 1677b(f)(1)(A) ............................................................................................................6, 7

19 U.S.C. § 1677e(a) ..........................................................................................................................8

19 U.S.C. § 1677e(a)(1) .................................................................................................................6, 7

19 U.S.C. § 1677e(b) ......................................................................................................................7, 8

I.  **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we respectfully submit the following comments in support of the December 15, 2022 remand results issued by the Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand Order in *AG Der Dillinger Hüttenwerke v. United States*, Ct. No. 17-00158 (Dec. 15, 2022), ECF No. 153 ("Third Remand Results"). For the reasons discussed below, Nucor respectfully requests that this Court sustain Commerce's remand determination and reject the arguments raised by Plaintiff AG Der Dillinger Hüttenwerke ("Dillinger"). *See* Pls.' Corrected Comments in Opp'n to the Final Results of Redetermination (Feb. 21, 2023), ECF No. 165 ("Dillinger Comments"). Nucor adopts the arguments made in Defendant's comments on the agency's remand redetermination and provides herein additional information and argument in support of the agency's determination. *See* Defendant's Corrected Response to Comments on Remand Redetermination (Mar. 24, 2023), ECF No. 169 ("Defendant Comments").

II. **ARGUMENT**

In its opinion, the Court remanded to Commerce to further explain the data it relied on as facts available to determine Dillinger's cost of prime and non-prime merchandise. *See AG Der Dillinger Hüttenwerke v. United States*, Ct. No. 17-00158, slip op. 22-114 (Sept. 23, 2022) at 8 ("*Dillinger Hüttenwerke III*"), ECF No. 152. As explained in Defendant's comments and discussed herein, Commerce's Third Remand Results further explain its basis and articulates a permissible reason for using Dillinger's books and records as facts available. As such, Nucor respectfully requests that the Court sustain Commerce's remand determination.

1

### A. Commerce's Decision to Rely on Dillinger's Books and Records Instead of Dillinger's Estimated Costs Is In Accordance With Law

"To be in accordance with law, {an agency} decision must not be arbitrary and capricious…and must be supported by substantial evidence and reasoned explanations." *U.S. Steel Corp. v. United States*, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336 (2013) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-43 (1983); *SKF USA Inc. v. United States*, 630 F.3d 1365, 1373-74 (Fed. Cir. 2011)). Accordingly, Commerce need only "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle*, 463 U.S. at 43 (citation omitted). Moreover, "a court may {not} displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Zhaoqing New Zhongya Aluminum Co., Ltd. v. United States*, 36 CIT 1390, 1392, 877 F. Supp. 2d 1301, 1305 (2012) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). As discussed in Defendant's comments and below, Commerce provided a reasoned explanation for its selection of facts available based on its consideration of the record evidence, and, consequently, the agency's determination here is supported by the record and in accordance with law.

As Commerce explained, because Dillinger's actual costs to produce prime and non-prime merchandise are not on the record, there is an informational gap in the record. *See* Third Remand Results at 3. Given this gap in the record, Commerce further explained that relying on Dillinger's own books and records is a reasonable method to allocate Dillinger's costs between prime and non-prime products. Third Remand Results at 4-6. As Commerce highlights, and as Dillinger acknowledges, non-prime merchandise is a consequence of producing prime plate. *Id.* In other words, as Commerce explained, while Dillinger may intend to produce 100 prime units,

it may conclude that two units are imperfect (*i.e.*, non-prime) and thus have to sell the units at a reduced price. *Id.* at 5. As the production of non-prime merchandise is an unavoidable result of the production process for prime merchandise, the loss associated with the generation and selling of these two units is a cost of producing 98 prime units. *Id.* To ignore this reality would ignore the true cost of producing prime merchandise. Thus, Commerce explained, to assign costs in a manner that acknowledges this inherent cost of producing prime merchandise is an appropriate method for allocating costs that results in a reasonable representation of the actual costs of production. *Id.*

In challenging Commerce's remand determination, Dillinger proposes that Commerce should have relied on its allocation methodology, which estimated the costs associated with non-prime plate based on yield rates. Dillinger Comments at 7. But, even assuming that Dillinger's proposal was reasonable, Commerce was not required to use it. *See Alabama Aircraft Industries, Inc. v. United States*, 586 F.3d 1372, 1376 (Fed. Cir. 2009) (citing *Motor Vehicle Mfrs.*, 463 U.S. at 43) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); *see also Dillinger France S.A. v. United States*, No. 17-00159, slip op. 22-97 (Ct. Int'l Trade Aug. 18, 2022), ("*Dillinger France IV*") at 11-12. Here, Commerce reviewed the information on the record and adequately explained the connection between the facts found, *i.e.*, Dillinger only tracks total costs and cannot differentiate prime from non-prime costs, and the choices made, *i.e.*, using Dillinger's books and records reflects the fact that non-prime plate is a consequence of producing prime plate and allocates costs accordingly. *See Motor Vehicle*, 463 U.S. at 43.

Moreover, Commerce sufficiently explained why it declined to use Dillinger's estimated costs. Dillinger developed its estimate using the yield rates for regular plate and line-pipe plate

during the POI. *See* Dillinger Comments at 7; Defendant Comments at 8. Commerce explains that Dillinger's assumptions underlying its estimate were unsupported. Third Remand Results at 11. Namely, Dillinger assumes that the actual costs of producing non-prime products are on average equal to its average costs of producing prime products. *Id.* Commerce notes that because Dillinger did not provide information on the physical characteristics of the non-prime products, there is no evidence to support the inference that the share of the physical characteristics of the non-prime products is the same as the share of the physical characteristics of the prime products. *Id.* at 12. Commerce also explains that there is no record evidence to support Dillinger's assumption that its costs of producing non-prime products cannot be lower than its cost to produce prime products. *Id.* at 12.

By contrast, Commerce points out that Dillinger's auditors acknowledge that the lost value attributable to the production of non-prime products is an indirect cost of producing the prime products. Specifically, in discussing Dillinger's financial statement, Commerce noted that "the auditor expressly acknowledged that Dillinger's practice of allocating the lost value attributable to the production of non-prime products resulted in a reasonable allocation of both the direct and indirect costs to the production of prime products." *Id.* at 14. Although Dillinger asserts that it is "a fundamental error" for Commerce to "claim that Dillinger uses likely selling price of non-prime products as their costs" in its normal books and records, this argument is contradicted by Dillinger's own reporting.[1] *See id.* at 3. Thus, Commerce examined Dillinger's

---

[1] Specifically, when directed to explain how its "system records, classifies, aggregates, and allocates the costs to products, including the merchandise under consideration, in the normal course of business{,}" Dillinger explained that the "actual average cost system flows directly from the actual costs reported in the financial accounting system as those costs are booked to specific cost centers and materials accounts." Letter from DeKieffer & Horgan, PLLC to Sec'y Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Federal Republic of Germany; AG der Dillinger Hüttenwerke Section D Response* (July 15, 2016), C.R. 102-07,

proposed methodology and, based on an examination of the record evidence, explained why the agency's approach was preferable to that proffered by Dillinger. As such, Commerce has adequately explained why it selected costs as recorded in Dillinger's books and records and complied with its "obligation to ensure that the reported costs of production reasonably reflect the cost of producing the subject merchandise under consideration." *Dillinger Hüttenwerke III* at 8.

Dillinger also takes issue with Commerce's decision to "shift" production costs from non-prime products to prime products. Dillinger Comments at 8. This, however, ignores the record and Commerce's explanation. To start, as noted above, Commerce explained why it chose to allocate prime and non-prime costs in accordance with Dillinger's books and records and why this method was preferable to Dillinger's proposed methodology. Further, because the record does not allow for the identification of the actual costs for prime and non-prime products, Commerce was required to identify a methodology for allocating total costs between prime and non-prime products. Accordingly, Dillinger's argument that costs were "shifted" from non-prime

---

P.R. 199 at D-16 ("Dillinger Sec. D QR"). Dillinger further explained that it generates a monthly report (*i.e.*, the "internal factory results") by product group, in which, "the total actual average costs from the actual average cost system are allocated to specific product groups based upon the standard costs for each production order in such groups weighted by the sales quantity for each order." *Id.* Dillinger subsequently explained that "{i}n Dillinger's internal factor results {}, non-prime merchandise is reported at is sales value (*i.e.*, manufacturing costs = net sales value)." Letter from DeKieffer & Horgan, PLLC to Sec'y Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Federal Republic of Germany; AG der Dillinger Hüttenwerke Supplemental Section D Response* (Sept. 28, 2016), C.R. 404-26, P.R. 350 at 22. This [

]. *Id.* at Appendix SD-27; Dillinger Sec. D QR at Appendix D-14. Documents on the public record of the underlying administrative proceeding are identified here as "P.R.," followed by the number assigned to the relevant document in the administrative record index filed with the Court on September 11, 2017, ECF No. 23. Documents in the confidential administrative record are identified by name, followed by "C.R." and the corresponding record number.

products is misplaced because it presumes that the actual cost of producing non-prime products is on the record.

> **B.** **Commerce's Remand Results Are Consistent with the U.S. Court of Appeals for the Federal Circuit Opinion and Other Court Precedent**

Dillinger objects to Commerce's chosen methodology, asserting that it is contrary to the U.S. Court of Appeals for the Federal Circuit's opinion in *Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020) as well as other court precedent because Commerce impermissibly "shifts" production costs from non-prime to prime product. Dillinger Comments at 8-13. But, as explained above, this presumes the record contains the actual cost for non-prime products. Instead, because the record does not contain the actual costs to produce prime and non-prime plate, Commerce identified a means for allocating costs among these products. Moreover, this Court already considered, and rejected, the claim that the Federal Circuit has bared Commerce from using company books and records to value non-prime products. *Dillinger France IV* at 14. The Court explained that, "{w}hile the Federal Circuit directed Commerce to determine the actual costs of prime and non-prime product to calculate normal value, this directive does not necessarily identify—or cabin—what information Commerce may rely on as facts available under 19 U.S.C. § 1677e(a)(1), once the agency concludes that it cannot determine the actual costs of prime and non-prime product." *Dillinger France IV* at 14 (citations, quotations omitted).

The other court precedent Dillinger cites is likewise unavailing. First, Dillinger points to *IPSCO v. United States*, 965 F.2d 1056, 1058-61 (Fed. Cir. 1992) for the proposition that Commerce cannot allocate production costs to the non-prime merchandise based upon market value. Dillinger Comments at 10-11. But, like the Federal Circuit's decision in *Dillinger France*, *see Dillinger France S.A.*, 981 F.3d 1318, that case addressed the calculation of normal value

under 19 U.S.C. § 1677b(f)(1)(A). *See Dillinger France IV* at 14. Thus, like *Dillinger France*, *see generally Dillinger France*, 981 F.3d at 1318, *IPSCO* did not address and therefore does not limit what information Commerce may select as facts available under 19 U.S.C. § 1677e(a)(1). Next, Dillinger argues Commerce's remand results do not accord with *Husteel Co. v. United States*, 552 F. Supp. 3d 1405 (Ct. Int'l Trade 2022). Dillinger Comments at 12. But, Dillinger's reliance on this case is likewise misplaced. As Defendant notes, this case addresses a different situation and does not demonstrate that Commerce's redetermination is unsupported by the record or otherwise not in accordance with law. In *Husteel*, the Court was faced with the question of whether it was proper for Commerce to rely on the respondent's actual cost of producing prime and non-prime merchandise. *See Husteel Co.*, 552 F. Supp. 3d at 1408. Here, in contrast, Dillinger has not reported the actual cost of producing prime and non-prime merchandise, and, as a result, Commerce was required to resort to facts available to fill this gap in the record.[2] Thus, here, the question is whether Commerce's approach is supported in light of the fact that it did not have the actual cost of producing prime and non-prime merchandise.

## C.  Commerce Did Not Impermissibly Apply An Adverse Inference

Dillinger contends that Commerce's methodology "has imposed an impermissible adverse inference," because the company contends it has cooperated to the best of its ability. Dillinger Comments at 14. Yet Commerce did not apply an adverse inference under

---

[2]   In discussing this case, Dillinger claims that the manner in which NEXTEEL reported its costs is analogous to Dillinger and the manner in which Dillinger proposes its costs should be allocated. Dillinger Comments at 12-13. To start, this appears to be incorrect, as the Court in *Husteel* stated that NEXTEEL assigned its products full cost and did not value them differently for inventory purposes. *Husteel Co.*, 552 F. Supp. 3d at 1410-11. Moreover, Dillinger's assertion is based on information contained in NEXTEEL's questionnaire response, which is not on the record of this proceeding. *Id.* Further, even if Dillinger is correct and it was appropriate to consider information outside of the record here, this would not undermine Commerce's determination because in *Husteel*, Commerce calculated costs pursuant to 19 U.S.C. § 1677b(f)(1)(A) and was not relying on fact available, as it is here.

19 U.S.C. § 1677e(b), nor did it have to. *See* Third Remand Results at 16. Under the statute, Commerce "shall" use facts otherwise available where, *inter alia*, necessary information is not on the record. 19 U.S.C. § 1677e(a). While the level of cooperation is relevant in determining whether an adverse inference should be applied in selecting from among facts available, no such inference was used here. *See id.* § 1677e(b).

As Defendant explains, *see* Defendant Comments at 7-8, Dillinger incorrectly presumes that because Commerce did not use its proffered method of allocating its prime and non-prime costs this equates to a determination based on adverse facts available. *See* Dillinger Comments at 14-19. At no point in its determination did the agency state that it was applying an adverse inference in selecting among facts available. In fact, Commerce's Third Remand Results emphasize that "Dillinger is quite simply mistaken that Commerce's reliance on its books and records to fill an information gap created by Dillinger's decision is an impermissible adverse inference because Commerce's reliance . . . accords with Dillinger's normal books and records accords with its own recognition that the information recorded in its normal books and records results in the total direct and indirect costs reasonably attributable to the production of prime products being allocated to prime products." Third Remand Results at 16. Indeed, it is unclear how using Dillinger's costs as reported in the company's own accounting could be considered "adverse." As such, Dillinger's claim that Commerce impermissibly applied an adverse inference is misplaced and ignores the agency's determination.

## III. <u>CONCLUSION</u>

For the reasons contained herein, Nucor respectfully requests that the Court sustain Commerce's remand determination as supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

<u>/s/ Alan H. Price</u>
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: March 30, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that these comments complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments on Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,602 words.

_/s/ Alan H. Price_
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

March 30, 2023
(Date)