UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  The Honorable Leo M. Gordon, Judge

_____

|  |  |  |
|---|---|---|
| AG DER DILLINGER HÜTTENWERKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| ILSENBURGER GROBBLECH GMBH, *et al.*, | ) | |
| | ) | |
| Consolidated Plaintiffs, | ) | Consol. Ct. No. 17-00158 |
| and | ) | |
| | ) | |
| THYSSENKRUPP STEEL EUROPE AG, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NUCOR CORPORATION, *et. al*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

**PLAINTIFF AG DER DILLINGER HÜTTENWERKE
COMMENTS IN PARTIAL OPPOSITION TO
<u>THE FINAL RESULTS OF REDETERMINATION</u>**

Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
Tel: (202) 783-6900
email:  montalbine@dhlaw.de
*Counsel to AG Der Dillinger Hüttenwerke*

Date: October 16, 2023

# TABLE OF CONTENTS

I.     ARGUMENT ................................................................................................... 1

     A.     Commerce Properly Determined That the Facts of This Case Are Analogous to Those of *Bohler*................................................................................................ 1

     B.     In Light of Its Determination That the Facts of This Case Are Analogous to Those of *Bohler*, Commerce Should Also Accept Dillinger's Quality Code for Sour Service Pressure Vessel Steel (Code 759).................................................... 2

     C.     Based Upon the Fundamental Shift in the Record of this Case, the Court Should Revise Its August 2021 Order and Remand Commerce's Determination Concerning the Quality Code for Sour Service Pressure Vessel Plate ................. 7

II.    CONCLUSION.............................................................................................................. 9

i

## TABLE OF AUTHORITIES

**Cases**

AG der Dillinger Hüttenwerke v. United States,
   No. 17-00158, slip op. 93-94 (CIT June 23, 2023)...................................................... 1

Bohler Bleche GMBH & Co. KG v. United States,
   324 F. Supp. 3d 1344 (CIT 2018) ............................................................... *passim*

Carpenter Tech. Corp. v. United States,
   26 CIT 830 (CIT 2002) ................................................................................... 6

Fusong Jinlong Wooden Group Co. v. United States,
   No. 19-00144, slip op. 23-145 (CIT Oct. 4, 2023) ...................................................... 8

Senza-Gel Corp. v. Seiffhart,
   803 F.2d 661 (Fed. Cir. 1986) .......................................................................... 8

SKF USA Inc. v. United States,
   675 F. Supp. 2d 1264 (CIT 2009) ...................................................................... 6

Union Steel v. United States,
   804 F. Supp. 2d 1356 (CIT 2012) ...................................................................... 8

**Statutes**

19 U.S.C. § 1677m(d) .......................................................................................... 3

**Administrative Determinations**

Determination in the Less-Than-Fair-Value Investigation of Certain Carbon and Alloy Steel
Cut-To-Length Plate from Germany, 82 Fed. Reg. 16360 (Apr. 4, 2017) .................................... 4

Pursuant to the Court's scheduling order of September 15, 2023 (ECF 186), plaintiff, AG der Dillinger Hüttenwerke ("Dillinger"), hereby submits these comments in partial opposition to the final results of redetermination filed by the U.S. Department of Commerce ("Commerce") in this case on September 7, 2023 (ECF 184-1) ("Redetermination IV").

## I.    ARGUMENT

### A.    Commerce Properly Determined That the Facts of This Case Are Analogous to Those of *Bohler*

The Court remanded the issue of the quality code for sour service petroleum transport or line pipe steel "for Commerce to further explain why its determination is reasonable in light of its approach in Bohler, or if appropriate, reconsider its rejection of Dillinger's proposed quality code for sour transport plate. AG der Dillinger Hüttenwerke v. United States, No. 17-00158, slip op. 93-94 at 27 (CIT June 23, 2023) ("Dillinger Germany IV") (referring to Bohler Bleche GMBH & Co. KG v. United States, 324 F. Supp. 3d 1344 (CIT 2018) ("Bohler")).  The Court specifically noted that,:

> Given Commerce's apparent recognition in Bohler that its model-match methodology insufficiently accounted for variations in the alloy content of the products at issue in that proceeding, the court concludes that Commerce should have the opportunity to explain why a similar outcome is not warranted here.

Dillinger Germany IV, slip op. 93-94 at 26-27.

In its final results of redetermination, Commerce now finds that the facts of this case are "analogous" to *Bohler* and has revised Dillinger's calculations using its reported quality code for sour service petroleum transport plate (*i.e.*, 771).  Redetermination IV, 2 & 5.  In reaching this determination, Commerce recognized that Dillinger, similar to the respondent in *Bohler*, provided (1) sales and cost information demonstrating the consistently higher net prices and costs for sour service petroleum transport plate and other steels designated specifically for the

transport of petroleum products and (2) documentation comparing the manufacturing of sour service petroleum transport plate to other steels and the unique physical properties of sour service petroleum transport plate.  Id. at 5-6.  Commerce also noted that the antidumping questionnaire specifically "permitted respondents to include additional quality codes not included in Commerce's list when reporting the 'quality' product characteristic for its products." Id. at 5, n.18.

Commerce's determination that the facts of this case are analogous to those of *Bohler* is correct, and the Court should therefore sustain Commerce's acceptance of Dillinger's reported quality code for sour service petroleum transport plate (code 771).

**B.      In Light of Its Determination That the Facts of This Case Are Analogous to Those of *Bohler*, Commerce Should Also Accept Dillinger's Quality Code for Sour Service Pressure Vessel Steel (Code 759)**

As discussed above, Commerce has determined that the facts of this case are "analogous" to *Bohler* and has accepted Dillinger's reported quality code for sour service petroleum transport plate (code 771), finding that the information submitted by Dillinger during the original investigation demonstrated commercially significant differences in the physical characteristics for sour service petroleum transport plate and steels designated for the transport of normal petroleum products.  Redetermination IV, 4-5.

In the same manner, Dillinger presented comparable information during the original investigation demonstrating commercially significant differences in the physical characteristics for sour service pressure vessel steel and other pressure vessel steel and supporting the addition of a quality code for sour service pressure vessel steel (code 759).  The issues involving sour service petroleum transport plate and sour service pressure vessel plate are exactly the same. The only difference is the form of the downstream product using the steel plate.  Sour service

petroleum transport plate is used to make pipelines to transport sour crude oil and pressure vessel plate is used to manufacture pressurized tanks holding sour crude oil.

Crude oil is routinely classified as sweet or sour with reference to the amount of sulfur it contains. Sour crude oil has a sulfur content of greater than 0.5% and some of this sulfur is in the form of hydrogen sulfide ($H_2S$). Hydrogen sulfide is extremely corrosive and therefore steels used for sour service must be specially manufactured with extremely low levels of phosphorus (P) and sulfur (S) to withstand the corrosion effects, such as hydrogen induced cracking (HIC). Dillinger Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record, 6 (March 12, 2018) (ECF 39 & 40) ("Dillinger Br."). Phosphorus and sulfur appear naturally in the pig iron and scrap used to produce steel. Therefore, the steel must be "cleaned" through different processes of desulfurization, dephosphorization and vacuum degassing. Id. The cleanliness of the steel must also be guarded throughout the casting process in order to avoid any resulfurization or reoxidization. Id.

As with the quality code for sour service petroleum transport/line pipe steel (code 771) discussed above, Dillinger provided Commerce with extensive documentation showing the differences in the actual physical characteristics with respect to sour service pressure vessel steel (code 759) and standard pressure vessel steel. All of this information is outlined and explained in Dillinger's Brief and is comparable in every respect to the information accepted by Commerce in supporting the quality code for sour service petroleum transport steel (code 771). *See* Dillinger Br., 5-11. Commerce never informed Dillinger of the nature of any deficiencies in this information as required by 19 U.S.C. § 1677m(d).

Commerce's new determination that the facts of this case are "analogous" to *Bohler* fundamentally shifts the record of this investigation and requires Commerce to further explain

3

why its determination rejecting an additional quality code for sour service pressure vessel steel (code 759) is reasonable in light of its approach in *Bohler* and now its acceptance of the quality code for sour service petroleum transport steel (code 771).

A key holding in *Bohler* is that the Court specifically found that the plaintiffs' proposed revisions to Commerce's model-match methodology were not untimely even though they were made after the initial comment period had expired and Commerce had issued its final product characteristics.  *See* Bohler, 324 F. Supp. 3d at 1352.  The Court specifically stated that this was "a case where 'the interests in fairness and accuracy outweigh the burden upon Commerce' presented by having to consider Plaintiffs' concerns about the model-match methodology."  Id. (citation omitted).  Here it is important to understand that the additions to the model-match methodology requested by the plaintiffs in *Bohler* related to adding entirely new fields to the model-match methodology.  *See* id. at 1349.  If such significant additions to the model-match methodology cannot properly be considered untimely, then the limited addition of a quality code for sour service pressure vessel steel as specifically permitted by the questionnaire instructions can certainly not be considered untimely.

Therefore, in light of *Bohler*, Commerce should reconsider its determination to treat Dillinger's addition of a quality code for sour service pressure vessel steel (code 759) as untimely.  *See* Final-IDM at 77.

Both the proposed product characteristics issued May 19, 2016 and the final product characteristics issued June 10, 2106 expressly directed respondents to "{u}se additional number codes for each additional Quality you propose."  Proposed Product Characteristics at 7 (PD92); Final Product Characteristics at Attachment I, p. 8 (PD129).  While all of the other product characteristics (*i.e.*, fields 3.2 through 3.13) specifically state: "Do not create any additional

4

reporting codes for this field," field number 3.1 for Quality does not contain this language.  *See* Final Product Characteristics at Attachment I (PD129).  Rather, field number 3.1 explicitly states that respondents may use additional Quality codes.  Id. at Attachment I, p.8.  In its new redetermination, Commerce also affirmed that the antidumping questionnaire specifically "permitted respondents to include additional quality codes not included in Commerce's list when reporting the 'quality' product characteristic for its products."  Redetermination IV, 5, n.18.  Therefore, Dillinger's addition of Quality codes in its questionnaire responses cannot be seen as untimely.

Moreover, Dillinger did raise the issue of sour service steels in its initial June 2, 2016 comments on the proposed product characteristics.  Dillinger Product Characteristics Comments at 2-3 & App. 1 (PD107).  Although, at that time, Dillinger only discussed an additional Quality code for sour service line pipe steel, it specifically stated that, as expressly permitted by the directions to the Quality field, Dillinger would propose additional Quality codes as needed when submitting its questionnaire responses.  Id. at 3.  Moreover, the 74-page presentation on the *Requirements for Steel Plate in Sour Service* submitted as Appendix 1 to Dillinger's June 2, 2016 comments specifically discusses both line pipe plate and pressure vessel plate.  Id. at App. 1. The problem of the corrosive effects of hydrogen sulfide is the same for both line pipe plate and pressure vessel plate and the solution of drastically reducing the levels of phosphorus and sulfur in the steel is the same.  Therefore, the additional quality code for sour service pressure vessel steel was simply a natural extension of the model-matching concerns for sour service steels already raised during the initial product characteristic comment period.

Moreover, the quality codes originally proposed by Commerce included seven codes for pressure vessel steels.  DOC Proposed Product Characteristics Letter at 5-7 (PD92).  Without

5

providing any evidence whatsoever, Nucor simply stated that "the seven pressure vessel categories should be limited to two groups, which better reflect the cost and price differences among these products." Nucor Product Characteristics Comments at 6 (PD110).  Nucor then proposed one Quality code for alloyed pressure vessel steel and another for non-alloy pressure vessel steel.  Id.  Commerce ultimately collapsed all pressure vessel steels into one Quality code (code 760).  DOC Product Characteristics Letter at 7 (PD129).  Therefore, Dillinger never had an opportunity to comment upon the impact of this one quality code for all pressure vessel steels, treating all pressure vessel steels as identical regardless of commercially significant differences in physical characteristics.

Moreover, Commerce must also apply a fair and objective standard when identifying commercially significant differences in physical characteristics.  It cannot require of Dillinger information that was never requested and that was not required of the other parties to this proceeding.  Commerce may also not properly accept additional quality codes only when they increase the antidumping margin as is the case with the quality code for sour service petroleum transport steel (code 771)[1] and then reject additional quality codes based upon comparable information when they reduce the antidumping margin.

Like any government agency, Commerce is under a duty to accord fairness to the parties that appear before it.  SKF USA Inc. v. United States, 33 CIT 1866, 1878, 675 F. Supp. 2d 1264, 1276 (CIT 2009).  As the Court stated in Carpenter Tech., "Respondents have a right to expect fair, impartial, and consistent treatment in agency proceedings."  Carpenter Tech. Corp. v. United States, 26 CIT 830, 837-38 (CIT 2002) (citations omitted).  It is therefore incumbent

---

[1] Dillinger's revised margin in the final results of redetermination has increased from 4.98% to 4.99%.

upon Commerce to apply its standards impartially to all parties similarly situated.  Id. at 838.

**C.    Based Upon the Fundamental Shift in the Record of this Case, the Court Should Revise Its August 2021 Order and Remand Commerce's Determination Concerning the Quality Code for Sour Service Pressure Vessel Plate**

In its final results of redetermination, Commerce declined to reconsider its rejection of Dillinger's proposed quality code for sour service pressure vessel steel in light of its approach in *Bohler*, stating only that "the Court already sustained Commerce's rejection of this quality code" in its Memorandum and Order of August 18, 2021 (ECF No. 121) ("August 2021 Order"). Redetermination IV, 9.  Commerce did not claim that the record evidence identifying commercially significant differences in the physical characteristics of sour service pressure vessel steel is meaningfully different than that it accepted for sour service petroleum transport plate.

As explained above, Commerce's new determination that the facts of this case are "analogous" to *Bohler* represents a fundamental shift in the record of this investigation and requires Commerce to further explain why its determination rejecting an additional quality code for sour service pressure vessel steel (code 759) is reasonable in light of its approach in *Bohler* and its new acceptance of the quality code for sour service petroleum transport steel (code 771).

This fundamental shift in the record of this investigation also changes the record upon which the Court's *August 2021 Order* was based.  For example, in the order, the Court references Commerce's statement that Dillinger did not provide information that would allow Dillinger to report revised quality codes for different pressure vessel plate products.  *See* August 2021 Order, 8.  However, Commerce's new redetermination shows that Commerce has now found Dillinger's information to be sufficient with respect to sour service petroleum transport steel.  As detailed above, Dillinger has provided the same type and quantity of information regarding sour service

7

pressure vessel steel.

In addition, the Court's *August 2021 Order* does not reference *Bohler* or require Commerce to explain why its determination is reasonable in light of its approach in <u>Bohler</u>. For example, a key holding in *Bohler* is that the Court specifically found that the plaintiffs' proposed revisions to Commerce's model-match methodology were not untimely even though they were made after the initial comment period had expired and Commerce had issued its final product characteristics. *See* <u>Bohler</u>, 324 F. Supp. 3d at 1352.

Accordingly, based upon Commerce's new redetermination and the fundamental shift it represents in the record of this investigation, the Court should revise its *August 2021 Order* and remand this matter back to Commerce to explain why its determination is reasonable in light of its approach in *Bohler* and its acceptance of the quality code for sour service petroleum transport steel (code 771), or if appropriate, reconsider its rejection of Dillinger's proposed quality code for sour service pressure vessel plate.

Pursuant to Rule 54(b) of the Rules of this Court, "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of judgment." USCIT R. 54(b). The Court also possesses inherent authority to reconsider interlocutory orders at any time. *See* <u>Senza-Gel Corp. v. Seiffhart</u>, 803 F.2d 661, 663 (Fed. Cir. 1986) (observing that trial court "employed its inherent power to reconsider its interlocutory decrees"); <u>Union Steel v. United States</u>, 804 F. Supp. 2d 1356, 1367 (CIT 2012) (stating that the Court possesses "general authority . . . to reconsider a non-final order prior to entering final judgment"). The Court routinely vacates or revises previous rulings based upon the results of subsequent remands. *See, e.g.,* <u>Fusong Jinlong Wooden Group Co. v. United States</u>, No. 19-00144, slip op. 23-145 (CIT Oct. 4, 2023) (partially

vacating prior decision based upon results of subsequent remand).

## II.   Conclusion

For the reasons stated above, we respectfully request that the Court sustain Commerce's redetermination with respect to the quality code for sour transport plate and remand Commerce's redetermination with respect to the quality code for sour service pressure vessel plate.

Respectfully submitted,

/s/ *Marc E. Montalbine*
Marc E. Montalbine*
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  montalbine@dhlaw.de

Date: October 16, 2023                          *Counsel to AG der Dillinger Hüttenwerke*

_____

* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

### Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word for Microsoft 365 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of this Court, the undersigned certifies that these comments comply with the word limitations set forth in the Court's scheduling order of September 15, 2023 (ECF 186).  Specifically, excluding those exempted portions of the brief, as set forth in section 2(B)(1) of the Chambers Procedures, I hereby certify that these comments contain **2,484** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Marc E. Montalbine*
Marc E. Montalbine
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  montalbine@dhlaw.de
*Counsel to AG der Dillinger Hüttenwerke*