IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, <br><br> Plaintiff, <br><br> ILSENBURGER GROBBLECH GMBH, SALZGITTER MANNESMANN GROBBLECH GMBH, SALZGITTER FLACHSTAHL GMBH, SALZGITTER MANNESMANN INTERNATIONAL GMBH, and FRIEDR. LOHMANN GMBH, <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION and SSAB ENTERPRISES LLC, <br><br> Defendant-Intervenors. | Consol. Court No. 17-00158 |

**DEFENDANT'S RESPONSE TO COMMENTS
ON FOURTH REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff AG der Dillinger Hüttenwerke (Dillinger), ECF No. 192, and defendant-intervenor Nucor Corporation (Nucor), ECF No. 193, concerning the Department of Commerce's final results of the fourth remand redetermination filed in accordance with this Court's decision and fourth remand order in *AG Der Dillinger Hüttenwerke v. United States*, 648 F. Supp. 3d 1321 (Ct. Int'l Trade 2023) (*Dillinger Germany IV*). *See* Final Results of Redetermination Pursuant to

Court Remand, Sept. 6, 2023 (Remand Redetermination), ECF No. 184 (P.R.R. 7).[1]  For the reasons explained below, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United States.

## BACKGROUND

On April 4, 2017, Commerce published its final determination for the antidumping duty investigation covering certain carbon and alloy steel cut-to-length plate from Germany.  *See Certain Carbon and Alloy Steel Cut-to-Length Plate from the Federal Republic of Germany*, 82 Fed. Reg. 16,360 (Dep't of Commerce Apr. 4, 2017) (final LTFV determ.), and accompanying Issues and Decision Memorandum (IDM).  In the final determination, Commerce rejected Dillinger's proposed quality code of 771 for sour service petroleum transport plate products.  Dillinger then brought this suit, challenging Commerce's model-match methodology, along with cost allocation issues that have now been resolved.  *See AG Der Dillinger Hüttenwerke v. United States*, 399 F. Supp. 3d 1247 (Ct. Int'l Trade 2019) (*Dillinger Germany I*); *AG Der Dillinger Hüttenwerke v. United States*, 534 F. Supp. 3d 1403 (Ct. Int'l Trade 2021) (*Dillinger Germany II*); *AG Der Dillinger Hüttenwerke v. United States*, 592 F. Supp. 3d 1344 (Ct. Int'l Trade 2022) (*Dillinger Germany III*).

Parallel with the Court's remand order in *Dillinger Germany II*, this Court issued a separate memorandum and order sustaining Commerce's rejection of Dillinger's proposed quality code for sour service pressure vessel plate, and stayed Dillinger's challenge to Commerce's rejection of the proposed quality code for sour service petroleum transport plate pending the outcome of the cost allocation issues.  *See Memorandum and Order*, ECF No. 121 (Aug. 18, 2021) (*August 2021 Order*).  After a series of remands regarding the cost allocation

---

[1] Citations to the public record (P.R.R.) and confidential record (C.R.R.) refer to the record of the antidumping duty administrative redetermination.

issue, in *Dillinger IV*, this Court sustained Commerce's application of facts otherwise available to the cost allocation of Dillinger's prime and non-prime costs. *See Dillinger IV*, 648 F. Supp. 3d at 1328. The Court also sustained Commerce's application of partial adverse facts available with respect to consolidated plaintiffs Ilsenburger Grobblech GMBH, Salzgitter Mannesmann Grobblech GMBH (SMSD), Salzgitter Flachstahl GMBH, and Salzgitter Mannesmann International GMBH. *Id.* at 1333.

However, this Court remanded for further explanation and reconsideration of Commerce's decision to reject Dillinger's proposed quality code for sour service petroleum transport plate, in light of Commerce's approach in *Bohler Blech GMBH & Co. KG v. United States*, 324 F. Supp. 3d 1344 (Ct. Int'l Trade 2018). *Id.* at 1335-36. In *Bohler*, on remand, Commerce accepted Bohler's proposed field "GRADE" to account for all commercially significant differences, which the Court sustained. *See Bohler Blech GMBH & Co. KG v. United States*, 362 F. Supp. 3d 1377, 1379-80 (Ct. Int'l Trade 2019). Commerce determined that Bohler provided sufficient information on the record to support the additional proposed field "GRADE," which demonstrated the impact of alloy content on the cost of production of Bohler's products. *Id.* at 1380.

Here, on remand, Commerce reconsidered its rejection of Dillinger's proposed quality code for sour service petroleum plate in light of *Bohler*. Commerce determined that the facts in *Bohler* were analogous to the facts of this proceeding. Remand Redetermination at 4-6. Thus, Commerce revised Dillinger's calculations using its reported quality code for sour service petroleum transport plate (*i.e.*, code 771), and recalculated Dillinger's final estimated weighted-average dumping margin by increasing the margin to 4.99 percent. *Id.* at 9.

**ARGUMENT**

I.  **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

II.  **Commerce's Remand Redetermination Complies With The Court's Remand Order, Is Supported By Substantial Evidence, And Is In Accordance With Law**

Commerce's fourth remand redetermination complies with *Dillinger Germany IV* and is supported by substantial evidence and in accordance with law. The Court should reject Dillinger's argument regarding its proposed additional quality code for sour service vessel plate, because the Court has already decided that issue. *See generally* Dillinger Cmts. This Court should also reject Nucor's arguments that Commerce did not adequately discuss the alleged "important distinction" between this case and *Bohler*, Nucor Cmts. at 6, because Commerce explained why *Bohler* is analogous to this case and supported that determination with substantial evidence. *See* Remand Redetermination at 3-6.

Consistent with the Court's remand order, Commerce reconsidered its rejection of Dillinger's proposed quality code for sour service petroleum transport plate in light of *Bohler*. Specifically, Commerce found that the facts of this review are analogous to *Bohler*. *See id.* at 5. Commerce found that Dillinger provided a similar revision to the model match hierarchy used in *Bohler* and provided information on the record like that submitted in *Bohler* to demonstrate the consistently higher costs and net price for sour service petroleum transport plate. *Id.* at 5-6. Thus, based on the information on the record and its similarities to the information submitted in *Bohler*, Commerce included Dillinger's proposed quality code for sour service petroleum

4

transport plate, *i.e.*, 771, in the control numbers used in the margin calculations for Dillinger to account for commercially significant differences. *Id.* at 6.

Dillinger argues that because Commerce found *Bohler* to be analogous to this case, Commerce should also accept Dillinger's additional quality code (*i.e.*, 759) for sour service vessel plate. Dillinger argues that it provided comparable information during the investigation that demonstrated commercially significant differences in physical characteristics. Dillinger Cmts. at 2-3. Thus, Dillinger requests that this Court revise its *August 2021 Order* in light of Commerce's finding that *Bohler* is analogous, and remand with instructions to "reconsider its rejection of Dillinger's proposed quality code for sour service pressure vessel plate." *Id.* at 7-8.

We disagree that a remand for purposes of Commerce's reconsideration of the rejection of Dillinger's proposed quality code for sour service pressure vessel steel is necessary.[2] At the outset, this Court only directed Commerce on remand to reconsider its decision to reject Dillinger's proposed quality code for sour service petroleum transport plate, and *not* Dillinger's proposed quality code for sour service pressure vessel steel. *See Dillinger Germany IV*, 648 F. Supp. 3d at 1333-36. Moreover, this Court has already sustained Commerce's rejection of Dillinger's proposed quality code for sour service pressure vessel steel. *August 2021 Order*, ECF No. 121 at 8. Specifically, with respect to sour service pressure vessel steel, the Court sustained Commerce's rejection of Dillinger's proposed quality code because it was not submitted within the time for submitting model match comments, nor did Dillinger provide information during the investigation that would justify revisiting this issue. *Id.* at 7-9. Thus, because this Court has already decided this issue, Commerce was not required to reconsider it on remand. Remand Redetermination at 9. Moreover, although the Court has the inherent authority

---

[2] Nucor agrees that this Court has already sustained Commerce's rejection of the additional quality code for sour service vessel plate. Nucor Cmts. at 2 n.1 (citing (P.R.R. 5)).

to reconsider the proposed quality code for sour service pressure vessel steel, as this Court explained in the *August 2021 Order*, it was reasonable for Commerce to reject the proposed quality code because Dillinger did not "provide information that 'would justify either allowing Dillinger to report revised quality codes for different pressure vessel plate products, or revisiting this issue once parties had submitted their questionnaire responses.'" ECF No. 121 at 8; *see e.g.*, *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1330 (Ct. Int'l Trade 2015) (sustaining agency decision to reject model-match comments submitted after end of comment period); *Juancheng Kangtai Chemical Co., Ltd. v. United States*, No. 14-00056, Slip Op. 17-3, 2017 WL 218910, at *7 (Ct. Int'l Trade Jan. 19, 2017) (declining to address arguments in remand comments that "have already been considered unpersuasive or rejected").

Second, Nucor argues that Commerce did not provide an explanation or analysis in its remand as to why the facts of this case are analogous to *Bohler* such that the record information is sufficient to support this determination. *See* Nucor Cmts. at 2-5. Nucor also argues that Commerce did not discuss a significant distinction between this case and *Bohler*. *Id.* at 6. Specifically, Nucor states that in *Bohler*, the Court highlighted the discussion of cost and price differences presented to Commerce, while in this investigation, Dillinger only provided a cursory discussion in support of an additional quality code. *Id.* However, Nucor is incorrect.

As an initial matter, Commerce's remand redetermination explained why the facts of this case are analogous to *Bohler*. For example, Commerce stated that the respondent in *Bohler* "argued for a revision to the model-match hierarchy, through the addition of two product characteristic fields (*i.e.*, 'grade' and 'process') to account for commercially significant physical differences, while Dillinger has similarly proposed a revision to the model match hierarchy, through the additional quality product characteristic code (*i.e.*, 771), to account for the different

6

physical characteristics of sour service petroleum transport plate." Remand Redetermination at 5.

"Additionally, in *Bohler*, the respondent provided information on the record to support the additional product characteristic to demonstrate the impact of alloy content on the {cost of production} of its products, while Dillinger similarly provided information on the record to demonstrate the consistently higher costs and net prices for sour service petroleum transport plate, along with supporting documentation." *Id.* at 5-6. This supporting documentation included: (1) sales and cost information for products with its proposed quality code, demonstrating the consistently higher net prices and costs for sour service petroleum transport plate and other steels designated specifically for the transport of petroleum products; and (2) documentation comparing the manufacturing of sour service petroleum transport plate to other steels designated specifically for the transport of petroleum products, as well demonstrating the unique physical properties of sour service petroleum transport plate. *Id.* at 5; *see* Dillinger Section B Response and accompanying home market sales database (July 15, 2016) (P.R. 194; C.R. 77, 88); Dillinger Section C Response and accompanying U.S. sales database (July 15, 2016) (P.R. 198; C.R. 95, 96); Dillinger Section D Response and accompanying cost database (July 15, 2016) (P.R. 199; C.R. 103). As a result, Commerce reconsidered its rejection of the proposed quality code for sour service petroleum transport plate and determined to include the quality code of 771 "for Dillinger to account for commercially significant physical differences between sour service petroleum transport plate and other steels designated specifically for the transport of petroleum products." Remand Redetermination at 6. Thus, contrary to Nucor's argument, Commerce provided analysis as to why the facts of this case are analogous to *Bohler* and that there was sufficient record evidence to support this determination. *Id.* at 9.

Nucor also argues that Commerce relied on information and analysis that Dillinger never presented to Commerce in the investigation. *See* Nucor Cmts. at 5-6. However, as discussed above, Commerce's analysis on remand is supported by substantial evidence. Remand Redetermination at 5-6, 9. Additionally, while Dillinger provided more analysis of this issue in its briefing before the Court, the information on which the analysis was based was already on the record. *See id.*; *see* Dillinger Section B Response and accompanying home market sales database (July 15, 2016) (P.R. 194; C.R. 77, 88); Dillinger Section C Response and accompanying U.S. sales database (July 15, 2016) (P.R. 198; C.R. 95, 96); Dillinger Section D Response and accompanying cost database (July 15, 2016) (P.R. 199; C.R. 103). Thus, Commerce reasonably reconsidered its rejection of the proposed quality code for sour service petroleum transport plate in accordance with this Court's direction to evaluate factual similarities between this case and *Bohler*. *See Dillinger IV*, 648 F. Supp. 3d at 1335-36.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's fourth remand results and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

| | |
|---|---|
| OF COUNSEL: | /s/Kara M. Westercamp |
| AYAT MUJAIS | KARA M. WESTERCAMP |
| Senior Attorney | Trial Attorney |
| Office of the Chief | U.S. Department of Justice |

8

Counsel for Trade Enforcement  
& Compliance  
U.S. Department of Commerce

Civil Division  
Commercial Litigation Branch  
PO Box 480, Ben Franklin Station  
Washington, DC 20044  
Tel: (202) 305-7571  
Email: kara.m.westercamp@usdoj.gov

November 15, 2023

Attorneys for Defendant

## THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, | ) |
| Plaintiff, | ) |
| ILSENBURGER GROBBLECH GMBH, SALZGITTER MANNESMANN GROBBLECH GMBH, SALZGITTER FLACHSTAHL GMBH, SALZGITTER MANNESMANN INTERNATIONAL GMBH, and FRIEDR. LOHMANN GMBH, | ) |
| Consolidated Plaintiffs, | ) Consol. Court No. 17-00158 |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| NUCOR CORPORATION and SSAB ENTERPRISES LLC, | ) |
| Defendant-Intervenors. | ) |

## **ORDER**

Upon consideration of plaintiff's comments regarding the Department of Commerce's fourth remand redetermination, ECF No. 184, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's remand results are sustained and judgment entered for the United States.

Dated: _____    _____
   New York, New York                    Senior Judge

10

CERTIFICATE OF COMPLIANCE

      I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,059 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

                              s/ Kara M. Westercamp
                              KARA M. WESTERCAMP
                              Trial Attorney
                              Department of Justice
                              Civil Division