UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  The Honorable Leo M. Gordon, Judge

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, | ) |
| Plaintiff, | ) |
| ILSENBURGER GROBBLECH GMBH, *et al.*, | ) |
| Consolidated Plaintiffs, | )   Consol. Ct. No. 17-00158 |
| and | ) |
| THYSSENKRUPP STEEL EUROPE AG, | ) |
| Plaintiff-Intervenor, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| NUCOR CORPORATION, *et. al*, | ) |
| Defendant-Intervenors. | ) |

**PLAINTIFF AG DER DILLINGER HÜTTENWERKE
RESPONSIVE COMMENTS IN PARTIAL SUPPORT
<u>OF THE FINAL RESULTS OF REDETERMINATION</u>**

Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, D.C. 20005
Tel: (202) 783-6900
email:  montalbine@dhlaw.de
*Counsel to AG Der Dillinger Hüttenwerke*

Date: November 15, 2023

**TABLE OF CONTENTS**

I.      ARGUMENT ..........................................................................................................1

    A.      Commerce Properly Determined That the Facts of This Case Are Analogous to
            Those of *Bohler*........................................................................................................1

    B.      In Light of Its Determination That the Facts of This Case Are Analogous to
            Those of *Bohler*, Commerce Should Also Accept Dillinger's Quality Code for
            Sour Service Pressure Vessel Steel (Code 759).......................................................6

II.     CONCLUSION..........................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

AG der Dillinger Hüttenwerke v. United States,
  648 F. Supp. 3d 1321 (CIT June 23, 2023)..................................................................1, 4, 6

Bohler Bleche GMBH & Co. KG v. United States,
  324 F. Supp. 3d 1344 (CIT 2018) ..................................................................... *passim*

Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States,
  172 F. Supp. 3d 1353 (CIT 2016)....................................................................................2

Hitachi Energy USA Inc. v. United States,
  34 F.4th 1375 (Fed. Cir. 2022) .......................................................................................6

NMB Singapore Ltd. v. United States,
  557 F.3d 1316 (Fed. Cir. 2009).......................................................................................2

**Statutes**

19 U.S.C. § 1677(16)(A)......................................................................................................3

19 U.S.C. § 1677m(d)......................................................................................................6, 7

**Administrative Determinations**

Determination in the Less-Than-Fair-Value Investigation of Certain Carbon and Alloy Steel
Cut-To-Length Plate from Germany, 82 Fed. Reg. 16360 (Apr. 4, 2017) ......................................8

Pursuant to the Court's scheduling order of September 15, 2023 (ECF 186), plaintiff, AG der Dillinger Hüttenwerke ("Dillinger"), hereby submits these comments in response to the comments on final results of redetermination filed by defendant-intervenor Nucor Corporation ("Nucor") in this case on October 16, 2023 (ECF 193) ("Nucor Comments").

## I.   ARGUMENT

### A.   Commerce Properly Determined That the Facts of This Case Are Analogous to Those of *Bohler*

The Court remanded the issue of the Quality code for sour service petroleum transport or line pipe steel for Commerce to reconsider its rejection of Dillinger's proposed Quality code in light of its approach in *Bohler*.  AG der Dillinger Hüttenwerke v. United States, 648 F. Supp. 3d 1321, 1336 (CIT June 23, 2023) ("Dillinger IV") (referring to Bohler Bleche GMBH & Co. KG v. United States, 324 F. Supp. 3d 1344 (CIT 2018) ("Bohler")).  The Court specifically noted that:

> As the circumstances in Bohler appear analogous, the court reiterates its observation that "[r]easoned decision-making requires a certain measure of consistency."

Dillinger IV, 648 F. Supp. 3d at 1336 (citation omitted).

In its final results of redetermination, Commerce found, as the Court had suggested, that the facts of this case are "analogous" to *Bohler*.  Final Results of Redetermination Pursuant to Court Remand, 2 & 4 (Sept. 7, 2023) (ECF 184-1) ("Redetermination IV").  Accordingly, Commerce revised Dillinger's calculations using its reported Quality code for sour service petroleum transport plate (*i.e.*, 771).  Id. at 9-10.  In reaching this determination, Commerce recognized that Dillinger, similar to the respondent in *Bohler*, provided (1) sales and cost information demonstrating the consistently higher net prices and costs for sour service petroleum transport plate and other steels designated specifically for the transport of petroleum products

1

and (2) documentation comparing the manufacturing of sour service petroleum transport plate to other steels and the unique physical properties of sour service petroleum transport plate.  Id. at 5-6.

Nucor challenges Commerce's redetermination by incorrectly claiming that Commerce failed to sufficiently explain its determination.  However, the record of the remand proceeding shows that Commerce fully considered all arguments and properly explained its determination that the facts of this case are "analogous" to *Bohler*.

As this Court explained in *Foshan*, the Court must sustain a determination "where Commerce's decisional path is reasonably discernable."  Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States, 172 F. Supp. 3d 1353, 1363 (CIT 2016) (citing NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1321-22 (Fed. Cir. 2009)).  The decisional path for Commerce's determination that the facts of this case are "analogous" to *Bohler* is clearly discernable from the record of the remand proceeding and fully supported by substantial evidence on the administrative record.

Commerce prepared its remand redetermination in a two-step process.  On August 10, 2023, Commerce issued draft remand results giving parties seven days to file comments.  Draft Results of Redetermination, 2 & 4 (Aug. 10, 2023) (REM04 PD1).  On August 17, 2023, Dillinger filed extensive comments on the draft redetermination.  Dillinger Draft Remand Comments (Aug. 17, 2023) (REM04 PD6; REM04 CD4).  These comments totaled 38 pages and included extensive citations to the cost data, price data and documentation from the administrative record of the original investigation, demonstrating that the facts of this case are "analogous" to *Bohler* and that the standard Quality codes originally listed by Commerce did not properly account for commercially significant differences between the physical characteristics of

petroleum transport plate and pressure vessel plate for sour service and the physical

characteristics of standard petroleum transport plate and pressure vessel plate in contravention of

19 U.S.C. § 1677(16)(A).

    In its final results of redetermination, Commerce quoted Dillinger's factual information

in detail, listing nearly 20 footnote citations to Dillinger's comments, which, in turn, cite to

specific data on the administrative record of the original investigation.  *See* <u>Redetermination IV</u>,

6-8.  For example, Commerce cites to the cost and price data referenced on page 6 of Dillinger's

comments.  <u>Id</u>. at 7, n.32.  This cost and price data is, in turn, reproduced in Table 2 of

Attachment 1 of the comments and comes directly from the sales and costs files submitted by

Dillinger during the original investigation.

    In summarizing the data submitted by Dillinger, Commerce explained:

> To support the commercially significant differences in the physical characteristics
> of sour service petroleum transport plate when compared to other steels
> designated for the transport of petroleum products, Dillinger provided: (1) sales
> and cost information for products with its proposed quality code, demonstrating
> the consistently higher net prices and costs for sour service petroleum transport
> plate and other steels designated specifically for the transport of petroleum
> products; and (2) documentation comparing the manufacturing of sour service
> petroleum transport plate to other steels designated specifically for the transport
> of petroleum products, as well demonstrating the unique physical properties of
> sour service petroleum transport plate.

<u>Redetermination IV</u>, 5.  Commerce also explained that, like the respondent in *Bohler*, "Dillinger

similarly provided information on the record to demonstrate the consistently higher costs and net

prices for sour service petroleum transport plate, along with supporting documentation."  <u>Id</u>. at 6.

Again, all of the data and supporting documentation provided by Dillinger is listed in detail on

pages 6-8 of the final redetermination.  <u>Id</u>. at 6-8.

    Accordingly, Commerce has properly explained its determination concerning the Quality

code for sour service petroleum transport/line pipe steel and supported it with substantial

3

evidence on the administrative record of the original investigation.

Nucor's contention that Dillinger relies on information not presented to Commerce in the original investigation is simply incorrect.  *See* <u>Nucor Comments</u>, 4.  All of the factual information referenced by Dillinger in its comments on the draft redetermination came from the administrative record of the original investigation.  In fact, in footnote 3 of its comments on the final redetermination, Nucor concedes that it "is not claiming that Dillinger has relied on information that was not on the record in the underlying investigation." <u>Id</u>. at 4, n.3.

Nucor's related contention that Dillinger relies on analysis not presented to Commerce in the original investigation is similarly without merit.  *See* <u>Nucor Comments</u>, 4.  The Court remanded this issue to Commerce with the explicit direction that Commerce explain its determination in light of its approach in *Bohler*.  <u>Dillinger IV</u>, 648 F. Supp. 3d at 1336.  Thus, because *Bohler* is a legal precedent decided after the original investigation, any analysis of whether the facts of this case are "analogous" to *Bohler* must by necessity involve an analysis not presented during the original investigation.  However, it cannot be disputed that all of the facts referenced by Dillinger in its analysis that this case is analogous to *Bohler* are facts contained on the administrative record of the original investigation.

Moreover, any lack of a more extensive analysis of the additional Quality codes during the course of the investigation is due entirely to the fact that Commerce never claimed any deficiencies in the information submitted by Dillinger until the final determination.  Dillinger added the additional Quality codes pursuant to the explicit directions in the questionnaire, which stated:

> Use additional number codes for each additional Quality you propose.  Provide a detailed narrative description of each additional Quality you propose, and explain what differentiates each of those additional Qualities from each of the ones listed above with respect to actual physical properties.  Specifically, explain why you

> have assigned the particular numeric code within the Quality code hierarchy
> for matching purposes.

Letter from *U.S. Dep't of Commerce* to *deKieffer & Horgan* at Attachment 1, p. 8 (June 10, 2016) (PD129) (hereinafter "<u>DOC Product Characteristics Letter</u>").

Pursuant to these instructions, Dillinger used additional number codes for sour service pressure vessel steel (code 759) and sour service petroleum transport plate (code 771) and provided the requested narrative description and explanations. *See, e.g.*, <u>Section B Response</u>, B-15 to B-16 (July 15, 2016) (PD194); <u>Supplemental Section B & C Response</u>, 10-11 (Sept. 20, 2016) (PD323); <u>Second Supplemental Section A, B & C Response</u>, at 8 (Oct. 20, 2016) (PD400). Prior to the final determination, Commerce noted no deficiencies in the information provided by Dillinger.  Rather, in its preliminary determination, the sole reason given by Commerce for disregarding the additional Quality codes reported by Dillinger was "{b}ecause Dillinger reported quality code values in product characteristic field 3.1 (QUALITYH) that were not included in the Department's Questionnaire."  <u>Preliminary Sales Calculation Memo</u>, 2 (Nov. 4, 2016) (PD443).  Commerce simply ignored the fact that the questionnaire specifically invited respondents to "{u}se additional number codes for each additional Quality you propose."  <u>DOC Product Characteristics Letter</u> at Attachment 1, p. 8 (PD129).

In its case brief during the original investigation, Dillinger addressed Commerce's stated objection, once again explaining that the questionnaire specifically permitted the addition of Quality codes.  <u>Dillinger Case Brief</u>, 37-38 & App. 4 (PD514, CD750).  It was not until its final determination that Commerce claimed any deficiency in the information submitted by Dillinger. As detailed in Dillinger's 56.2 brief and reply brief before this Court, all of the claimed deficiencies in Dillinger's information are without merit.  <u>Dillinger Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record</u>, 5-15 (March 12, 2018) (ECF 39 &

40) ("Dillinger Br."); Dillinger Reply Brief, 1-8 (Aug. 22, 2018) (ECF 62 & 63).

As the Federal Circuit stated in *Hitachi*, Commerce's failure to timely notify a party of deficiencies is a violation of 19 U.S.C. § 1677m(d) and the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified. Hitachi Energy USA Inc. v. United States, 34 F.4th 1375, 1384 (Fed. Cir. 2022). Moreover, in its final redetermination, Commerce now readily admits that the antidumping questionnaire specifically "permitted respondents to include additional quality codes not included in Commerce's list when reporting the 'quality' product characteristic for its products." Redetermination IV, 5, n.18.

**B.    In Light of Its Determination That the Facts of This Case Are Analogous to Those of *Bohler*, Commerce Should Also Accept Dillinger's Quality Code for Sour Service Pressure Vessel Steel (Code 759)**

In its comments on Commerce's redetermination, Nucor argues that Commerce properly declined to reconsider the analogous issue of a separate Quality code for sour service pressure vessel steel (Code 759). Nucor Comments, 2, n.1. Dillinger has already extensively addressed this issue in its comments in partial opposition to the final results of redetermination, and we incorporate that discussion herein by reference. Dillinger Comments in Partial Opposition to Redetermination, 2-9 (Oct. 16, 2023) (ECF 192).

The Court's rational of giving Commerce an opportunity to address whether the circumstances in *Bohler* are comparable to those in this case since *Bohler* and Commerce's subsequent remand results in that action were not published until after the submission of the Government's response brief in this litigation applies equally to the issue of the Quality code for sour service pressure vessel steel (Code 759), as does the Court's concern that "[r]easoned decision-making requires a certain measure of consistency." Dillinger IV, 648 F. Supp. 3d at 1336 (citation omitted).

6

The issues involving sour service petroleum transport plate and sour service pressure vessel plate are exactly the same.  The only difference is the form of the downstream product using the steel plate.  Sour service petroleum transport plate is used to make pipelines to transport sour crude oil and pressure vessel plate is used to manufacture pressurized tanks holding sour crude oil.

As with the Quality code for sour service petroleum transport/line pipe steel (code 771) discussed above, Dillinger provided Commerce with extensive documentation showing the differences in the actual physical characteristics with respect to sour service pressure vessel steel (code 759) and standard pressure vessel steel.  All of this information is outlined and explained in Dillinger's Brief and is comparable in every respect to the information accepted by Commerce in supporting the Quality code for sour service petroleum transport steel (code 771).  *See* Dillinger Br., 5-11.  Commerce never informed Dillinger of the nature of any deficiencies in this information as required by 19 U.S.C. § 1677m(d).

Commerce's new determination that the facts of this case are "analogous" to *Bohler* fundamentally shifts the record of this investigation and requires Commerce to further explain why its determination rejecting an additional Quality code for sour service pressure vessel steel (code 759) is reasonable in light of its approach in *Bohler* and now its acceptance of the Quality code for sour service petroleum transport steel (code 771).

A key holding in *Bohler* is that the Court specifically found that the plaintiffs' proposed revisions to Commerce's model-match methodology were not untimely even though they were made after the initial comment period had expired and Commerce had issued its final product characteristics.  *See* Bohler, 324 F. Supp. 3d at 1352.  The Court specifically stated that this was "a case where 'the interests in fairness and accuracy outweigh the burden upon Commerce'

presented by having to consider Plaintiffs' concerns about the model-match methodology." Id. (citation omitted). Here it is important to understand that the additions to the model-match methodology requested by the plaintiffs in *Bohler* related to adding entirely new fields to the model-match methodology. *See* id. at 1349. If such significant additions to the model-match methodology cannot properly be considered untimely, then the limited addition of a Quality code for sour service pressure vessel steel as specifically permitted by the questionnaire instructions can certainly not be considered untimely.

Therefore, in light of *Bohler*, Commerce should reconsider its determination to treat Dillinger's addition of a Quality code for sour service pressure vessel steel (code 759) as untimely. *See* Final-IDM at 77.

In its final results of redetermination, Commerce declined to reconsider its rejection of Dillinger's proposed Quality code for sour service pressure vessel steel in light of its approach in *Bohler*, stating only that "the Court already sustained Commerce's rejection of this quality code" in its Memorandum and Order of August 18, 2021 (ECF No. 121) ("August 2021 Order"). Redetermination IV, 9. Commerce did not claim that the record evidence identifying commercially significant differences in the physical characteristics of sour service pressure vessel steel is meaningfully different than that it accepted for sour service petroleum transport plate.

The fundamental shift in the record of this investigation caused by Commerce's new determination that the facts of this case are "analogous" to *Bohler* also changes the record upon which the Court's *August 2021 Order* was based, raising the potential of inconsistent treatment. Accordingly, the Court should revise its *August 2021 Order* pursuant to USCIT Rule 54(b) and remand this matter back to Commerce to explain why its determination with respect to the

8

separate Quality code for sour service pressure vessel steel (Code 759) is reasonable in light of its approach in *Bohler* and its acceptance of the Quality code for sour service petroleum transport steel (code 771), or if appropriate, reconsider its rejection of Dillinger's proposed Quality code for sour service pressure vessel plate.

## II.   Conclusion

For the reasons stated above, we respectfully request that the Court sustain Commerce's redetermination with respect to the Quality code for sour transport plate and remand Commerce's redetermination with respect to the Quality code for sour service pressure vessel plate.

Respectfully submitted,

/s/ *Marc E. Montalbine*
Marc E. Montalbine\*
Gregory S. Menegaz
Alexandra H. Salzman
Merisa A. Horgan
**deKieffer & Horgan, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  montalbine@dhlaw.de
Date: November 15, 2023                    *Counsel to AG der Dillinger Hüttenwerke*

_____

\* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word for Microsoft 365 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of this Court, the undersigned certifies that these comments comply with the word limitations set forth in the Court's scheduling order of September 15, 2023 (ECF 186).  Specifically, excluding those exempted portions of the brief, as set forth in section 2(B)(1) of the Chambers Procedures, I hereby certify that these comments contain **2,502** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

 /s/ *Marc E. Montalbine*
Marc E. Montalbine
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth Street, N.W.
Suite 1101
Washington, DC 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  montalbine@dhlaw.de
*Counsel to AG der Dillinger Hüttenwerke*