A-428-844
Remand
Fed. Cir. 2024-1498
**Public Document**
E&C/OIX:  IR

*AG der Dillinger Hüttenwerke v. United States*,
**Court No. 17-00158 (CIT December 1, 2025)**
**Certain Carbon and Alloy Steel Cut-to-Length Plate from Germany**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court)

in *AG der Dillinger Hüttenwerke v. United States et al.*, consistent with the opinion issued by the

U.S. Court of Appeals for the Federal Circuit (Federal Circuit) (*Dillinger VI*).[1]  This action arises

out of the final determination in the less-than-fair-value (LTFV) investigation of certain carbon

and alloy steel cut-to-length plate (CTL plate) from the Federal Republic of Germany

(Germany).[2]

The Federal Circuit vacated and remanded the Court's decision in *Dillinger IV*, in which

the Court had sustained Commerce's remand redetermination to assign as facts otherwise

available the "likely selling price" recorded in AG der Dillinger Hüttenwerke's (Dillinger's)

---

[1] *See AG der Dillinger Hüttenwerke v. United States*, 156 F.4th 1314 (Fed. Cir. 2025) (*Dillinger VI*); *see also AG der Dillinger Hüttenwerke v. United States et al.*, Court No. 17-00158 (ECF No. 224) (CIT December 1, 2025) (*Remand Order*).
[2] *See Certain Carbon and Alloy Steel Cut-to-Length Plate from Germany:  Final Determination of Sales at Less Than Fair Value*, 82 FR 16360 (April 4, 2017) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM); *see also Certain Carbon and Alloy Steel Cut-to-Length Plate from Austria, Belgium, France, the Federal Republic of Germany, Italy, Japan, the Republic of Korea, and Taiwan:  Amended Final Affirmative Antidumping Determinations for France, the Federal Republic of Germany, the Republic of Korea and Taiwan, and Antidumping Duty Orders*, 82 FR 24096 (May 25, 2017); and *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Federal Republic of Germany: Notice of Court Decision Not in Harmony With the Amended Final Determination of Antidumping Investigation; Notice of Second Amended Final Determination*, 89 FR 1882 (January 11, 2024) (*Second Amended Final Determination*).

books and records as the cost of production (COP) for non-prime CTL plate, and also sustained

the Court's decision in *Dillinger V* to affirm Commerce's rejection of Dillinger's proposed

quality code for sour service petroleum transport plate.[3]

Pursuant to the Court's *Remand Order*, Commerce has revised its calculations of the cost

of non-prime CTL plate. As a result, as facts available, we have recalculated the COP of non-

prime CTL plate based on the total cost of manufacturing (TOTCOM) for certain prime CTL

plate reported in Dillinger's COP database, resulting in a revised weighted-average dumping

margin for Dillinger of 4.99 percent. Moreover, as a result of Dillinger's revised weighted-

average dumping margin, the all-others rate remains 20.99 percent.

## II.     BACKGROUND

In the LTFV investigation, as facts otherwise available, Commerce recalculated the COP

of Dillinger's non-prime CTL plate based on the sales value of the non-prime CTL plate sold

during the POI because Dillinger reported that it does not maintain COP information or detailed

physical characteristics of its non-prime CTL plate.[4] Dillinger challenged the *Final*

*Determination* regarding this aspect of Commerce's determination, along with other issues.

In *Dillinger I*, the Court remanded to Commerce to reconsider its application of facts

otherwise available to certain of Dillinger's downstream home market sales.[5] Pursuant to

*Dillinger I*, Commerce issued its *First Remand Redetermination* in which Commerce

reconsidered how it applied facts otherwise available to these sales.[6] In *Dillinger II*, the Court

---

[3] *See Dillinger VI*, 156 F.4th at 1323-1325; *see also AG der Dillinger Hüttenwerke v. United States*, 648 F.Supp. 3d 1321 (CIT 2023) (*Dillinger IV*); and *AG der Dillinger Hüttenwerke v. United States*, 672 F.Supp.3d 1351 (CIT 2023) (*Dillinger V*).

[4] *See Final Determination* IDM at Comment 30.

[5] *See AG der Dillinger Hüttenwerke v. United States*, 399 F. Supp. 3d 1247 (CIT 2019) (*Dillinger I*).

[6] *See Final Results of Redetermination Pursuant to Court Remand, Certain Carbon and Alloy Steel Cut-to-Length Plate from Germany,* Court No. 17-00158, Slip Op. 19-87 (CIT July 16, 2019), dated October 8, 2019 (*First Remand Redetermination*), available at https://access.trade.gov/resources/remands/19-87.pdf.

remanded to Commerce to consider its reallocation of costs between prime and non-prime CTL plate for Dillinger, among other Dillinger cost issues.[7]  In parallel with *Dillinger II*, the Court issued a separate memorandum and order staying Dillinger's challenge to Commerce's rejection of the proposed quality code for sour service petroleum transport plate pending the outcome of the cost issues on remand.[8]

In *Dillinger III*, the Court remanded again to Commerce to reconsider its selection of facts otherwise available for determining the COP of Dillinger's non-prime CTL plate.[9]  In *Dillinger IV*, the Court sustained Commerce's determination to assign the "likely selling price" recorded Dillinger's books and records as the COP for non-prime CTL plate.[10]  However, the Court remanded for further explanation and reconsideration Commerce's decision to reject Dillinger's proposed quality code for sour service petroleum transport plate.[11]  In *Dillinger V*, the Court sustained Commerce's acceptance of this proposed quality code.[12]

In *Dillinger VI*, the Federal Circuit sustained Commerce's rejection of Dillinger's proposed quality code for sour pressure vessel plate and vacated and remanded the Court's holding in *Dillinger IV*, in which the Court sustained Commerce's determination to assign, as facts otherwise available, the "likely selling price" in Dillinger's books and records as the COP for non-prime CTL plate.[13]  The Federal Circuit held that, while Commerce is not strictly constrained in selecting from facts otherwise available, there "must be a reasonable relationship between the selected facts otherwise available and the gap to be filled."[14]  As a result, the Federal

---

[7] *See AG der Dillinger Hüttenwerke v. United States*, 534 F.Supp.3d 1403 (CIT 2021) (*Dillinger II*).
[8] *See Memorandum and Order*, ECF No. 121 (August 18, 2021).
[9] *See AG der Dillinger Hüttenwerke v. United States*, 592 F.Supp.3d 1344 (CIT 2022) (*Dillinger III*).
[10] *See Dillinger IV*, 648 F.Supp.3d at 1328, 1333.
[11] *Id.*, 648 F.Supp.3d at 1336.
[12] *See Dillinger V*, 672 F.Supp.3d at 1358.
[13] *See Dillinger VI*, 156 F.4th at 1322-1325.
[14] *Id.*, 156 F.4th at 1325.

Circuit held that because it was the COP for non-prime CTL plate missing from the record, Commerce's selection as facts available of a selling price as the COP was unreasonable, consistent with *Dillinger France* and *IPSCO*.[15]

On January 21, 2026, we released our Draft Remand to interested parties.[16] On February 2, 2026, we received comments from Nucor Corporation (Nucor) and Dillinger.[17] We respond to these comments below. After considering the comments raised by interested parties, we made certain changes to our calculation of the cost of producing non-prime CTL plate. Specifically, we have recalculated the COP of non-prime CTL plate based on the TOTCOM for certain prime CTL plate reported in Dillinger's COP database. Because the revised dumping margin for Dillinger (*i.e.*, 4.99 percent) is identical to that in the *Second Amended Final Determination*,[18] the all-others rate remains 20.99 percent.

## III.    ANALYSIS

After considering the comments raised by interested parties,[19] we have made changes to the Draft Remand with regard to the cost of producing non-prime CTL plate selected as facts otherwise available.[20] Specifically, for these final results of redetermination, we have used as facts available the TOTCOM of Dillinger's lowest cost control number (CONNUM), as reported in its COP database, to calculate the cost of producing non-prime CTL plate.[21]

---

[15] *Id*. (citing *Dillinger France S.A. v. United States*, 981 F.3d 1318, 1321-1324 (Fed. Cir. 2020) (*Dillinger France*); and *IPSCO, Inc. v. United States*, 956 F.2d 1056, 1061 (Fed. Cir. 1992) (*IPSCO*)).

[16] *See* Draft Results of Redetermination Pursuant to Court Remand, *AG der Dillinger Hüttenwerke v. United States*, Court No. 17-00158 (CIT December 1, 2025), dated January 21, 2026 (Draft Remand).

[17] *See* Nucor's Letter, "Comments on Draft Results of Redetermination," dated February 2, 2026 (Nucor's Comments); *see also* Dillinger's Letter, "Comments on Draft Results of Redetermination," dated February 2, 2026 (Dillinger's Comments).

[18] *See Second Amended Final Determination*, 89 FR at 1883.

[19] *See* Dillinger's Comments.

[20] *See* Draft Remand at 4-5.

[21] *See* Memorandum, "Margin Calculations for AG der Dillinger Hüttenwerke Pursuant to Final Results of Fifth Remand Redetermination," dated concurrently with this memorandum (Final Calculations).

Commerce continues to find that, consistent with the *Second Remand Redetermination* and *Third Remand Redetermination*,[22] Dillinger failed to provide requested information (*i.e.*, COP information and complete physical characteristics of non-prime CTL plate) and, because such information is necessary and missing from the record, we have selected from the facts otherwise available to fill the gap, pursuant to section 776(a)(1) of the Tariff Act of 1930, as amended.

As a result of the Federal Circuit's holding in *Dillinger VI*, we are no longer using as facts otherwise available the selling price as the cost of producing the non-prime CTL plate or calculating the cost of producing non-prime CTL plate based, in part, on a sales price. Instead, we have calculated the COP of non-prime CTL plate based on the TOTCOM for the lowest cost prime CONNUM in Dillinger's COP database. In *Rebar from Türkiye*, we addressed a similar fact pattern to that present with Dillinger's non-prime CTL plate, for short-length steel concrete reinforcing bar (rebar).[23] There, a respondent's short-length rebar was only identified after the production process was completed and was ultimately sold "in bundles of mixed sizes and unidentified grades, without mill test certificates."[24] In its normal books and records, the respondent valued the COP of the short-length rebar only once it was either: (1) reintroduced into production as scrap; or (2) sold.[25] Those facts mirror those of this proceeding, given that Dillinger's non-prime CTL plate is only identified after the production process is complete,

---

[22] *See Final Results of Redetermination Pursuant to Court Remand, Certain Carbon and Alloy Steel Cut-to-Length Plate from Germany*, *AG der Dillinger Hüttenwerke, v. United States*, Court No. 17-00158, Slip Op. 21-101 (CIT August 18, 2021), dated January 19, 2022 (*Second Remand Redetermination*) at 5-13; *see also Final Results of Redetermination Pursuant to Court Remand, Certain Carbon and Alloy Steel Cut-to-Length Plate from Germany*, *AG der Dillinger Hüttenwerke, v. United States*, Court No. 17-00158, Slip Op. 22-114 (CIT September 23, 2022), dated December 15, 2022 (*Third Remand Redetermination*), at 4-6.
[23] *See Steel Concrete Reinforcing Bar from Turkey: Final Negative Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances*, 79 FR 54965 (September 15, 2014) (*Rebar from Türkiye*), and accompanying IDM at Comment 15.
[24] *Id*.
[25] *Id*.

which Dillinger then sells as "odds and ends" by the railcar without regard to size or grade, and with no accompanying mill test certificate.[26]  Further, similar to *Rebar from Türkiye*, Dillinger records the cost of this non-prime CTL plate in its books and records based on the sales price it can obtain for the non-prime CTL plate.[27]

Dillinger explained that there are several reasons why CTL plate may be designated as non-prime at the end of production, including "nonconformity of weight or dimensions" and "nonconformity of physical or mechanical properties."[28]  Because the non-prime CTL plate may have faulty dimensions or improper chemistry that leads to insufficient physical and mechanical properties, it is unreasonable to assume that this non-prime CTL plate had an equal COP as the prime CTL plate, which meets certain defined dimensional, physical, and mechanical requirements.  This is similar to the fact pattern in *Rebar from Türkiye*, where the respondent's short-length rebar has deficient dimensional characteristics.[29]

As a result, consistent with *Rebar from Türkiye*, we find it appropriate to value the cost of producing non-prime CTL plate based on the actual cost of producing prime CTL plate, because it goes through the same production steps as prime CTL plate.[30]  However, because of the "nonconforming" nature of the non-prime CTL plate (sold as "odds and ends" by the railcar without regard to size or grade), we find that, as facts available, it is appropriate to use the TOTCOM of the lowest cost prime CTL plate reported by Dillinger to calculate the COP of the non-prime CTL plate.  Therefore, for these final results of redetermination, we have assigned the

---

[26] *See* Dillinger's Letter, "AG der Dillinger Huttenwerke Section B Response," dated July 15, 2016, at B-11; *see also* Dillinger's Letter, "Response to Remand Questionnaire," dated October 5, 2021 (Dillinger's Remand QR), at 8.
[27] *See*, *e.g.*, Memorandum, "Verification of the Cost Response of AG der Dillinger Hüttenwerke in the Antidumping Duty Investigation of Certain Carbon and Alloy Steel Cut-To-Length Plate from Germany," dated January 27, 2017, at 22.
[28] *See* Dillinger's Remand QR at 13-14.
[29] *See Rebar from Türkiye* IDM at Comment 15.
[30] *Id.*

TOTCOM of the non-prime CTL plate equal to the lowest TOTCOM Dillinger reported for any prime CTL plate in its COP database.[31]  We have then allocated the resulting difference between the cost of producing non-prime CTL plate Dillinger reported and our revalued cost of producing non-prime CTL plate to the prime products.[32]

We find that using an actual COP reported for prime CTL plate to value the cost of producing non-prime CTL plate reasonably reflects the actual COP of non-prime CTL plate, consistent with *Dillinger VI* and *Dillinger France*, because it is an actual cost of producing merchandise under consideration that Dillinger experienced during the POI.[33]

## IV.    INTERESTED PARTY COMMENTS

On January 21, 2026, we released our Draft Remand to interested parties.[34]  On February 2, 2026, we received comments from the Nucor and Dillinger.[35]  Nucor's and Dillinger's comments on the issues are addressed below.  After considering these comments, we have made certain changes to our analysis for these final results of redetermination.

**Comment 1:  Dillinger's Cost of Producing Non-Prime CTL Plate**

The following is a verbatim executive summary of argument submitted by Nucor.  For further details, *see* Nucor's Comments at 3-4.

> {Commerce}'s calculation of Dillinger's cost of production ("COP") of non-prime plate in the draft remand is consistent with the {Federal Circuit}'s determination and supported by the record.  {Commerce} relied on the standard costs and cost adjustments reported by Dillinger for the period of investigation ("POI") and based on the company's books and records as facts available.  Thus, as instructed by the {Federal Circuit}, as facts available, {Commerce} has relied on information that has a reasonable relationship to the gap that needs to be filled.  {Commerce} should therefore maintain this determination for the final remand determination.

---

[31] *See* Final Calculations at 2 and Attachment 3.
[32] *Id*.
[33] *See Dillinger VI*, 156 F.4th at 1324-1325 (citing *Dillinger France*, 981 F.3d at 1321-1324); *see also Rebar from Türkiye* IDM at Comment 15.
[34] *See* Draft Remand.
[35] *See* Nucor's Comments; *see also* Dillinger's Comments.

The following is a verbatim executive summary of argument submitted by Dillinger.  For

further details, *see* Dillinger's Comments at 2-5.

- Commerce's draft results of redetermination are not consistent with the opinion issued by the {Federal Circuit}.[36]
- Commerce's calculation of the purported cost of non-prime plate is erroneous and does not bear any relation to the actual cost of production, which is the same for both prime and non-prime plate as the Federal Circuit held in *Dillinger VI*.
- Commerce is bound by the findings of fact and conclusions of law made by the Federal Circuit in *Dillinger VI* under the law of the case doctrine.[37]
- Commerce fails to explain how the amount it calculated as the purported cost of production of non-prime plate has any reasonable relationship to the costs of production under {section 773(b)(3) of the Act}.  Commerce also fails to explain why the estimated selling price of the non-prime plate should be deducted when calculating the purported costs of production.
- The per-ton value applied by Commerce is far less than the non-prime plate sales value Commerce used in the original investigation that was struck down by the Federal Circuit in *Dillinger VI*.
- The per-ton value applied by Commerce is also less than the {TOTCOM} of any of the reported CONNUMs. Because non-prime plate cannot be identified until the end of production, it goes through the exact same production steps as prime plate, incurring the exact same costs. It is therefore impossible for the actual cost of production of non-prime plate to be lower than the actual costs of production (TOTCOM) of any of the CONNUMs manufactured during the period of investigation.
- Commerce is also incorrect that its calculation of the purported cost of production of nonprime plate corresponds to the cost of production as reported in Dillinger's normal books and records.

**Commerce's Position:**  We agree with Dillinger that our calculation of the cost of

producing non-prime CTL plate in the Draft Remand was inconsistent with the Federal Circuit's

holding in *Dillinger VI*.  However, we continue to find that it is inappropriate to rely on the

average COP of all prime CTL plate, as Dillinger suggests.  Instead, as described above, we have

calculated the cost of producing non-prime CTL plate based on the lowest reported TOTCOM of

any prime CTL plate in Dillinger's COP database.[38]

---

[36] *See* Dillinger's Comments at 2 (citing, generally, *Dillinger VI*).
[37] *Id*. at 2 (citing *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001)).
[38] *See* Final Calculations at 2 and Attachment 3.

We agree that, in our Draft Remand, we relied on the standard costs for non-prime CTL plate, adjusted for variances, from Dillinger's standard cost accounting records, which in fact was based on the estimated sales value of the non-prime CTL plate.[39]  Therefore, consistent with the Federal Circuit's opinion in *Dillinger VI*,[40] we are no longer using the standard cost of the non-prime CTL plate as the cost of producing non-prime CTL plate, but instead are relying on the lowest COP Dillinger reported for any prime CTL plate during the POI.[41]

Nucor contends that our calculation in the Draft Remand was consistent with the Federal Circuit's opinion in *Dillinger VI*, because our calculation was based on Dillinger's reporting of its standard costs for the POI.[42]  While we used information that is a part of Dillinger's standard costs for the POI, we recognize that the "standard cost for non-prime CTL plate" was actually a sales price.[43]  Consequently, we find that our usage of the estimated sales price as a part of our calculation results in a similar "circular methodology" that the Federal Circuit found to be unreasonable, even as facts available, in *Dillinger VI*.[44]

However, we continue to find that it is appropriate to deviate from Dillinger's reported methodology for calculating the cost of producing non-prime CTL plate as equal to the weighted-average cost of producing all prime plate during the POI.  Dillinger claims that "the actual cost of production{} is the same for both prime and non-prime plate as the Federal Circuit has already held."[45]  We disagree that the Federal Circuit made such a holding in *Dillinger VI*.

---

[39] *See* Dillinger's Comments at 3; *see also* Memorandum, "Margin Calculations for AG der Dillinger Hüttenwerke Pursuant to Draft Results of Fifth Remand Redetermination," dated January 21, 2026 (Draft Calculations), at 2 and Attachment 3; *see also* Dillinger's Letter, "AG der Dillinger Hüttenwerke Supplemental Section D Response," dated September 28, 2016 (Dillinger's SDQR), at Appendix SD-30.

[40] *See Dillinger VI*, 156 F.4th at 1324-1325.

[41] *See* Final Calculations at 2 and Attachment 3.

[42] *See* Nucor's Comments at 3-4.

[43] *See* Dillinger's SDQR at Appendix SD-30; *see also* Draft Calculations at Attachment 3.

[44] *See Dillinger VI*, 156 F.4th at 1324-1325.

[45] *See* Dillinger's Comments at 4.

In its opinion, the Federal Circuit explained that "Commerce has not contested Dillinger's assertion that non-prime plate undergoes the same production process as prime plate." However, that is not equivalent to the Federal Circuit holding that the COP for both non-prime and prime CTL plate is identical.[46] Because Dillinger failed to report the complete physical characteristics of its non-prime CTL plate, as requested, we are unable to rely on Dillinger's assumption that the non-prime CTL plate produced during the POI is equivalent to the average of all prime CTL plate. As noted above, Dillinger explained that there are several reasons why CTL plate may be designated as non-prime at the end of production, including "nonconformity of weight or dimensions" and "nonconformity of physical or mechanical properties."[47] Because the non-prime CTL plate may have faulty dimensions or improper chemistry that leads to insufficient physical and mechanical properties, it is unreasonable to assume that this non-prime CTL plate had an equal COP as the prime CTL plate, which meets certain defined dimensional, physical, and mechanical requirements.

As a result, consistent with *Rebar from Türkiye*,[48] we find it appropriate to value the cost of producing non-prime CTL plate based on the actual cost of producing prime CTL plate because it does go through the same production steps as prime CTL plate.[49] However, because of the "nonconforming" nature of the non-prime CTL plate (which it is sold as "odds and ends" by railcar without regard to size or grade), we find that, as facts available, it is appropriate to use the TOTCOM of the lowest cost prime CTL plate Dillinger reported to calculate the COP of the non-prime CTL plate.

---

[46] *See Dillinger VI*, 156 F.4th at 1324-1325.
[47] *See* Dillinger's Remand QR at 13-14
[48] *See Rebar from Turkey* IDM at Comment 15.
[49] *Id.*

We find that using an actual COP reported for prime CTL plate to value the cost of producing non-prime CTL plate reasonably reflects the actual COP of non-prime CTL plate, consistent with *Dillinger VI* and *Dillinger France*, because it is an actual cost of producing merchandise under consideration that Dillinger experienced during the POI.[50]  In *Dillinger VI,* the Federal Circuit held that, in selecting from the facts otherwise available "Commerce is not strictly constrained by the standards articulated in statutes governing the necessary but missing information.  If the administrative record contained all the information necessary to decide the issue under consideration, there would be no informational gap and thus no need for Commerce to resort to facts otherwise available."[51]  Therefore, based on the limited information available on the record with which we may value the cost of producing non-prime CTL plate and the lack of information regarding its physical characteristics, we find that it is reasonable to assign the TOTCOM of the non-prime CTL plate equal to the lowest TOTCOM Dillinger reported for any prime CTL plate in its COP database, due to the defective nature of non-prime plate.

**Comment 2:  The All-Others Rate**

The following is a verbatim executive summary of argument submitted by Nucor.  For further details, *see* Nucor's Comments at 3-4.

> {Commerce} should correct the calculation of the all others rate to address an apparent ministerial error.  In light of the change to Dillinger's margin, the methodology used by {Commerce} throughout this proceeding to calculate the all others rate results in a margin of 21.00{ percent}.

**Commerce's Position:**  As described above, we made certain changes to our calculation of the cost of producing non-prime plate, resulting in an estimated weighted-average dumping margin

---

[50] *See Dillinger VI*, 156 F.4th at 1324-1325.  Dillinger also argued that "It is therefore **impossible** for the actual cost of production of non-prime plate to be lower than the actual {TOTCOM} of any of the CONNUMs manufactured during the period of investigation." (emphasis in original).  *See* Dillinger's Comments at 5.  However, because we are now utilizing the lowest TOTCOM of any CONNUM manufactured during the POI to calculate the cost of producing non-prime CTL plate, Dillinger's argument is moot.
[51] *See Dillinger VI*, 156 F.4th at 1325.

for Dillinger of 4.99 percent, which is the same margin calculated in the *Second Amended Final Determination*.[52]   As such, the all-others rate remains the same as the *Second Amended Final Determination* at 20.99 percent.[53]   Therefore, this issue is moot for the purposes of these final results of redetermination.

## V.    FINAL RESULTS OF REDETERMINATION

For purposes of these final results of redetermination, as facts otherwise available, Commerce has recalculated the cost of producing non-prime CTL plate based on the cost of producing prime CTL plate available on the record of this proceeding.   As a result of this change, Dillinger's estimated weighted-average dumping margin remains 4.99 percent and the all-others rate remains 20.99 percent.   Because these rates are the same as in the *Second Amended Final Determination*, Commerce will not need to amended its final determination should the Court sustain the remand redetermination.

3/5/2026

X _Chris / Abbott_

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[52] *See Second Amended Final Determination*, 89 FR at 1883.
[53] *Id.*

12